MODIFIED: MARCH 24, 2011
RENDERED: SEPTEMBER 23, 2010
TO BE PUBLISHED

$\mathfrak{Supreme\ Court\ of\ Kentucky}$   **FINAL**

2008-SC-000901-MR   **DATE** 3-24-11 EllAGrowthDC

THOMAS CLYDE BOWLING                                    APPELLANT


ON APPEAL FROM FAYETTE CIRCUIT COURT
V.            HONORABLE KIMBERLY N. BUNNELL, JUDGE
NO. 90-CR-00363


COMMONWEALTH OF KENTUCKY                                APPELLEE


**OPINION OF THE COURT BY JUSTICE NOBLE**

**AFFIRMING**

Appellant Thomas Clyde Bowling was convicted of the murders of Eddie and Tina Earley, and assault on their infant son, who was also shot during the crime, in Fayette Circuit Court in 1990. He was sentenced to the death penalty for the murders. His direct appeal followed, and the judgment was affirmed. *Bowling v. Commonwealth*, 873 S.W.2d 175 (Ky. 1993). He has filed multiple collateral attacks, none of which have resulted in a new trial. *See Bowling v. Commonwealth*, 926 S.W.2d 667 (Ky. 1996); *Bowling v. Commonwealth*, 981 S.W.2d 545 (Ky. 1998); *Bowling v. Parker,* 138 F.Supp.2d 821 (E.D. Ky. 2001), *aff'd*, 344 F.3d 487 (6th Cir. 2003); *Bowling v. Commonwealth*, 163 S.W.3d 361 (Ky. 2005); *Bowling v. Lexington-Fayette Urban County Gov't*, 172 S.W.3d 333 (Ky. 2005); *Bowling v. Commonwealth*, 224 S.W.3d 577 (Ky. 2006); *Baze v. Rees*, 217 S.W.3d 207 (Ky. 2006), *aff'd*, 553 U.S. 35 (2008); *Bowling v.*

*Kentucky Dept. of Corrections*, 301 S.W.3d 478 (Ky. 2009). He now comes before the Court seeking a new trial based on DNA evidence not available at the time of his trial. Because Appellant cannot meet the requirements of the DNA statute, KRS 422.285, the trial court's order is affirmed.

## I. Background

Appellant filed a motion in the original case against him in Fayette Circuit Court seeking DNA testing pursuant to KRS 422.285 in August 2006. This statute provides that a person convicted of a capital offense and who otherwise meets the requirements of the statute may "at any time" request deoxyribonucleic acid (DNA) testing and analysis of any evidence related to the conviction that the court or Commonwealth retains and that may contain biological evidence. Specifically, Appellant asked for DNA testing of a jacket allegedly worn during the crime and of his automobile.

Appellant now espouses a theory not presented at trial in support of his DNA motion. He speculates the existence of an alternative perpetrator of the crime onto whom he seeks to shift blame for the murders. Specifically, he alleges that the murder may have been committed by a member of the Adams family, members of which had befriended him and were known to engage in criminal activity.

Though Appellant presented no direct defense during the guilt phase at trial—he did not take the stand and called no witnesses—and instead made his case entirely by cross examination of the Commonwealth's 25 witnesses, he nonetheless points to evidence at trial that he claims supports his alternative perpetrator theory, if paired with DNA evidence. He specifically claims that

2

another person had the opportunity to commit the crimes and points to evidence showing that he did not know the victims; he did not confess to their murders; the gun presented at trial could not be established as the murder weapon; the two eyewitnesses gave conflicting descriptions of the murderer and could not pick Appellant out of a line-up; and no motive was established for the murders. He also claims that the jacket introduced at trial did not belong to him, according to his sister's testimony.

He now argues that the Adams family did have a motive instead. One of the victims, Eddie Earley, had turned the Adamses in for drug dealing, and the other victim, Tina Earley, was allegedly having an affair with one of the Adamses. Additionally, Appellant claims to have been so drunk on the day of the murders that he has no memory of the day except for John Ed Adams telling him he had to get his car out of town and to hide it. He theorizes that this is when he came into contact with the jacket and that he was set up to wear it while driving his car out of town to Powell County, where the car was later found. He wore the jacket as he hitchhiked from Powell County to his sister's home in Knoxville, Tennessee, where the jacket was later found. Appellant thus believes that DNA evidence that someone else had worn the jacket or had been in his car would have exonerated him or resulted in a different verdict or sentence at trial.

After filing the motion for testing, the parties agreed not to pursue a hearing to determine whether DNA evidence could be obtained from the vehicle after 16 years. This agreement was referenced in the trial court order dated February 22, 2007. The court did hear argument about the collar and

3

underarm area of the jacket. This resulted in the trial court ordering testing of the neck and arm area of the jacket, thereby implicitly finding that Appellant had satisfied the "reasonable probability" standard set forth in KRS 422.285(2)(a) or (3)(a). As to the vehicle, in addition to noting the parties' agreement, the trial court held that there could be no credible proof to establish the age of the DNA, and thus an inability to connect any DNA finding to the time of the offense, and denied DNA testing of the vehicle. The court also found that even if DNA evidence could be found in the car, it would not fit the criteria laid out in KRS 422.285.

Initial testing was done on the jacket, with the result that there was a mixture of the DNA of at least two people on the jacket. The trial court then declined further analysis on the jacket DNA to compare it to Appellant or other persons on the basis that the multiple DNA findings on the jacket showed that it had been contaminated, having been handled by numerous people during the trial and since.

Appellant now asks this Court to review the actions of the trial court, and to remand for complete DNA analysis. Because Appellant was sentenced to death, his appeal is to this Court as a matter of right. *See* Ky. Const. § 110(2)(b); *Leonard v. Commonwealth*, 279 S.W.3d 151, 155 (Ky. 2009) ("This Court has exclusive appellate jurisdiction over death penalty matters, even when the appeal involves a collateral attack on a sentence of death.").

## II. Analysis

Appellant argues that he is entitled to the DNA testing under both the United States Constitution and under KRS 422.285.

4

## A. Constitutional Claims

Appellant claims he is entitled to DNA testing under the Due Process Clause, under both substantive and procedural due process theories, and under the Eighth Amendment. None of these theories is convincing.

After Appellant submitted his brief to this Court, the U.S. Supreme Court issued a landmark ruling addressing whether there is a due process right to postconviction DNA testing. *See District Attorney's Office for Third Judicial Dist. v. Osborne*, 129 S.Ct. 2308 (2009). The Court flatly denied the existence of such a right under the rubric of substantive due process. After noting that the defendant in *Osborne* had asked the court to "recognize a freestanding right to DNA evidence" based on substantive due process, the Court stated, "We reject the invitation and conclude ... that there is no such substantive due process right." *Id.* at 2322.

As to whether such a right can be found in procedural due process, the Court first looked at whether the defendant has a liberty interest that is protected by due process. The Court found such an interest in *Osborne* in the state statutes providing for postconviction relief procedures aimed at demonstrating innocence. *Id.* at 2319. While Kentucky also has in place procedures for postconviction relief, *see* Ky. Const. § 16 (right of habeas corpus); RCr 11.42 (challenge to lawfulness of sentence); CR 60.02 (allowing relief from judgment for mistake, newly discovered evidence, inequity or any other reason of an extraordinary nature justifying relief), and specifically provides the right of a person sentenced to death to seek DNA testing, which if granted and is favorable may be used in postconviction proceedings to seek

5

relief, *see* KRS 422.285, there is no statutory right to demonstrate innocence under Kentucky law. Thus, if the Kentucky procedures create a liberty interest akin to the one in *Osborne,* it is a lesser interest.

This Court, however, need not decide what, if any, liberty interest might arise from those procedures. *Osborne* recognized that a person already convicted in a fair trial cannot claim the same liberty interest as a person first standing trial. 129 S.Ct. at 2320. As such, a convicted person is not entitled to the "familiar preconviction trial rights" in pursuit of a "postconviction liberty interest." *Id.* at 2319. Trial rights, such as the one to disclosure of exculpatory evidence in *Brady v. Maryland,* 373 U.S. 83 (1963), are simply inapplicable in the postconviction setting. *See Osborne,* 129 S.Ct at 2320 ("[The] right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that [the defendant] has already been found guilty at a fair trial, and has only a limited interest in postconviction relief. *Brady* is the wrong framework."). "A criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Id.* Such a defendant "has only a limited interest in postconviction relief." *Id.*

The states have substantial "flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* A state may properly limit the available procedures, which will be found to violate due process "only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.* This Court concludes that the procedures established in KRS 422.285 are sufficient to vindicate any substantive right to DNA testing that might also be created by the statute. The procedures "are similar to those

6

provided for DNA evidence by federal law and the law of other States, and they are not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental fairness.'" *Id.* at 2320-21 (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992)). As such, due process requires no additional rights beyond what is already provided in KRS 422.285 and the various postconviction procedures found in Kentucky law.

Appellant also argues that he is entitled to DNA testing under the Eighth Amendment, which he claims includes a right against the execution of an innocent person. He argues that DNA testing, which might demonstrate his innocence, is necessary to vindicate this Eighth Amendment right. First, "[w]hether such a federal right [to be released upon proof of actual innocence] exists is an open question," which the Supreme Court declined to decide in *Osborne. Id.* at 2321. Second, and more importantly, because this claim is one for a procedure needed to effectuate another right, it is actually a due process claim, where the substantive right (or liberty interest) to be protected stems from the Eighth Amendment. As noted above, there is no substantive due process right to DNA testing, nor is there a procedural due process right to anything beyond what KRS 422.285 currently provides. "The absence of a federal constitutional right to postconviction DNA evidence forecloses [Appellant's] Eighth Amendment claim, which rested upon his due process argument." *Young v. Philadelphia County Dist. Attorney's Office*, 341 F. App'x. 843, 846 (3d Cir. 2009).

## B. Statutory Claims

### 1. The Procedures Under KRS 422.285

The remaining question, then, is whether Appellant is entitled to the additional DNA testing he seeks under Kentucky law. The postconviction DNA-testing statute, KRS 422.285, was enacted in 2002 and was amended in 2007 for the purpose of allowing DNA analysis of evidence that had not been previously tested or previously tested according to current standards, when such evidence would negate a prior conviction or result in a more favorable verdict or sentence. Subsection (2)(a) of the statute mandates that a trial court "shall" order DNA testing and analysis if "a reasonable probability exists" that "the petitioner would not have been prosecuted or convicted" if the results are exculpatory. Such a showing is essentially one of exoneration. Subsection (3)(a) provides that a trial court "may" order such testing if it first finds that there is a "reasonable probability" that the "verdict or sentence would have been more favorable" because of the exculpatory DNA evidence, or a "reasonable probability" that the analysis will in fact produce exculpatory evidence. Both sections require prior notice to the Commonwealth and opportunity to respond.[1]

---

[1] The relevant portions of KRS 422.285 read in their entirety:

> (2) After notice to the prosecutor and an opportunity to respond, the court shall order DNA testing and analysis if the court finds that all of the following apply:
>
> > (a) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing and analysis;
> >
> > (b) The evidence is still in existence and is in a condition that allows DNA testing and analysis to be conducted; and

Thus, the first level of proof the movant must make in support of the DNA testing request, under either section (2) or (3) of the statute, is that the evidence sought would either exonerate the defendant, lead to a more favorable verdict or sentence, or otherwise be exculpatory. To do this, the movant must describe the role the evidence would have had if available in the original prosecution. It is obvious that at this point the movant will not know with certainty what the DNA evidence will show. Thus, two of the subsections, (2)(a) and (3)(a)(1) require the court to undertake the "reasonable probability" analysis under the assumption that the evidence will be favorable to the movant.

This assumption does not mean that the movant gets a free pass simply because he can allege that the evidence will be helpful. He must still state what he expects the evidence to be, and how that evidence would, within a reasonable probability, result in exoneration, or a more favorable verdict or

---

(c) The evidence was not previously subjected to DNA testing and analysis or was not subjected to the testing and analysis that is now requested and may resolve an issue not previously resolved by the previous testing and analysis.

(3) After notice to the prosecutor and an opportunity to respond, the court may order DNA testing and analysis if the court finds that all of the following apply:

(a) A reasonable probability exists that either:

1. The petitioner's verdict or sentence would have been more favorable if the results of DNA testing and analysis had been available at the trial leading to the judgment of conviction; or

2. DNA testing and analysis will produce exculpatory evidence;

(b) The evidence is still in existence and is in a condition that allows DNA testing and analysis to be conducted; and

(c) The evidence was not previously subject to DNA testing and analysis or was not subjected to the testing and analysis that is now requested and that may resolve an issue not previously resolved by the previous testing and analysis.

9

sentence, or be exculpatory. In the exercise of sound discretion, the trial court must then make the call whether such reasonable probability exists, looking to whether such evidence would probably result in a different verdict or sentence. But the analysis does not stop here.

Both sections of the statute also require that the DNA evidence still be in existence and in such a condition that testing can be conducted. KRS 422.285(2)(b) & (3)(b). This requires the movant, at a bare minimum, to specifically identify what is to be tested, and where on the item the DNA is expected to be found, as it is patently unreasonable to expect every area of an item to be tested. Since the evidence is not in the movant's custody, this may require the Commonwealth to establish the existence and condition of the evidence left in its or the court's control. If the Commonwealth objects that the evidence is not testable, since the state is the custodian of the evidence, the Commonwealth must go forward with expert testimony as to the viability of testing, which the movant may rebut. Even though a trial court may have found reasonable probability that the evidence as described by the movant would exonerate him, lead to a more favorable verdict, or definitely be exculpatory, the trial court must also find that the evidence requested to be tested exists in a condition that will allow proper DNA testing. If it is not, then obviously the inquiry is at an end.[2]

_____

[2] KRS 17.176(1) imposes additional requirements related to this aspect of KRS 422.285:

> In addition to the requirements specified in KRS 422.285, any evidence submitted for testing and analysis pursuant to KRS 422.285 or 422.287 shall be of probative value. When the motion is filed with the court requesting testing and analysis of evidence pursuant to this section, the

10

Finally, this evidence must not have been previously tested for DNA, or if it was tested, the movant must show that the type of testing now being requested is qualitatively different and "may resolve an issue not previously resolved by the previous testing and analysis." KRS 422.285(2)(c) & (3)(c). By this language, the legislature made clear its intent not to have successive, redundant DNA testing requests, and placed a high burden on a movant to establish that an entirely new issue is involved. Otherwise, DNA testing, sometimes many years after trial, is limited to the "one bite of the apple" rule.

## 2. Testing of the Car

In this case, the trial court found that any DNA evidence which could be found in the car would not present a reasonable probability of providing evidence that would be admissible at trial or satisfy "the criteria as outlined in KRS 422.285," because the age of any DNA found could not be established sufficiently to determine when it was deposited in the vehicle. The trial court properly excluded testing of DNA that at best could produce mere speculation. The vehicle belonged to Appellant, and as its usual driver, his DNA would obviously be in the vehicle. If DNA belonging to a member of the Adams family were also found in the car, without being able to precisely pinpoint when the DNA was deposited, it would prove nothing; by his own admission, Appellant allowed the Adamses to use his car. So, even if John Ed Adams's DNA could be found in the car after 16 years, that fact does not give rise to a reasonable

---

proceeding for a court to make a determination of the probative value of the evidence proposed to be tested and analyzed.

11

probability of exonerating Appellant, nor is there a reasonable probability that it would change the verdict or be exculpatory in any way.

Appellant points to sworn statements of his experts as proof that any DNA evidence found in the car could be shown to relate directly to the time of the murders, but this simply overstates the case. As one of the experts put it, "it is also *possible* that another person who drove the car could have left DNA," and "[t]hat DNA could *potentially* be detectable, especially if that person drove the car immediately prior to impound." (Emphasis added.) These statements point at best to a speculative possibility—not a reasonable probability—that any recovered evidence would be helpful.

### 3. Testing of the Jacket

As to the jacket, it is questionable whether the trial court was correct in allowing DNA testing in the first place, but if the decision is error, it is harmless. The jacket admitted at trial was found in Appellant's possessions at his sister's home in Tennessee. He had apparently worn the jacket in Powell County, and took it with him as he hitchhiked to Tennessee. Though no comparison testing was ever performed, it is almost inevitable that Appellant's DNA would be on the jacket since he wore it. Much like the DNA in the car, however, even if someone else's DNA was found on the jacket, this would not exonerate Appellant, and even with an alternate perpetrator theory, the presence of someone else's DNA would not necessarily be exculpatory.

Appellant was known to have worn the jacket at some point near the time of the murders; the fact that another person may also have worn the jacket would not have changed the result at trial. Appellant had an opportunity

12

to challenge whether the jacket was his at trial, and now claims some of the testimony, specifically that of his sister, would support such a finding. Appellant has not shown by a reasonable probability that additional DNA comparison testing would lead to a different result. "Where there is enough other incriminating evidence and an explanation for the DNA result, science alone cannot prove a prisoner innocent. The availability of technologies not available at trial cannot mean that every criminal conviction, or even every criminal conviction involving biological evidence, is suddenly in doubt." *Osborne*, 129 S. Ct. at 2316. Thus, it was appropriate for the trial court to deny comparison testing of the jacket. If testing showed that additional DNA on the jacket came from one of the Adamses, the jury would still be required to speculate as to when an Adams family member had worn the jacket.

Given all the other evidence at trial—Appellant's mother testified that he had been living with her in the weeks prior to the crime and had left her house the morning of the murders; physical evidence showed Appellant's car was used in the murder; witnesses in Powell County saw Appellant in the jacket; Appellant's sister testified that he always wore a black jacket, though she did not identify the jacket produced at trial as his; the jacket was found with Appellant in Tennessee; and gun residue was found on the jacket—it cannot be said that merely introducing evidence that the jacket had been worn by someone else at some point in time would result in an acquittal or lesser sentence, within a reasonable probability. Even if Appellant fleshed out his alternative perpetrator theory with testimony that established a motive for an Adams family member to kill the Earleys, and assuming that the other DNA on

13

the jacket belonged to a member of the Adams family, there still would be the question of when the DNA was deposited on the jacket and still would not preclude Appellant as the shooter, within a reasonable probability.

Thus Appellant has failed to satisfy the requirements of KRS 422.285. By its use of "reasonable probability" language, the legislature set a high threshold which must be met before a new trial can be granted based on DNA evidence that is sought long after finality of the underlying judgment. The movant must establish before the trial court that a viable theory exists, if DNA testing reveals the expected, that would exonerate him, or that testing would result in exculpatory evidence that would lead to a more favorable verdict or sentence. Before ordering genetic testing, the trial court must make a finding, on the record, that there is a reasonable probability that such a result will occur. Then, depending upon the facts of a given case, the trial court must determine, after the initial testing, whether to test further to identify any DNA belonging to someone other than the movant. The effect of excluding the movant by an absence of his DNA on the item tested must also be weighed in light of the facts in a given case. The trial court necessarily has broad discretion in applying the results of any DNA testing to the question of whether a new trial is warranted. The trial court in this case did not clearly reach a decision that no new trial was warranted, but such a finding was the inevitable result of denying further DNA testing on the jacket. There was no error that requires reversal.

14

## III. Conclusion

Because Appellant has no constitutional right to further DNA testing and has failed to satisfy the requirements of KRS 422.285, the orders of the Fayette Circuit Court denying further DNA testing are affirmed.

All sitting. All concur.


COUNSEL FOR APPELLANT:

David Michael Barron
Department of Public Advocacy
Assistant Public Advocate
Capital Post Conviction Unit
100 Fair Oaks Lane, Suite 301
Frankfort, Kentucky 40601

Jamesa J. Drake
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, Kentucky 40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

James Daryl Havey
Office of the Commonwealth's Attorney
116 North Upper Street, Suite 300
Lexington, Kentucky 40507-1161

William Robert Long, Jr.
Assistant Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, Kentucky 40601-8204

# Supreme Court of Kentucky

## 2008-SC-000901-MR

THOMAS CLYDE BOWLING                        APPELLANT

                     ON APPEAL FROM FAYETTE CIRCUIT COURT
V.                HONORABLE KIMBERLY N. BUNNELL, JUDGE
                         NO. 90-CR-00363

COMMONWEALTH OF KENTUCKY                APPELLEE

## ORDER DENYING PETITION FOR REHEARING AND MODIFYING OPINION

The Appellant having filed a Petition for Rehearing of the Opinion of the Court by Justice Noble, rendered September 23, 2010; and the Court being otherwise fully and sufficiently advised;

The Court ORDERS that the Petition for Rehearing is DENIED. The Court, on its own motion, modifies the Opinion of the Court by Justice Noble, rendered September 23, 2010. Pages 1, 7 and 11 are SUBSTITUTED in lieu of the original. Said modification does not affect the holding.

All sitting. All concur.

ENTERED: March 24, 2011.

_____
CHIEF JUSTICE