RENDERED:  DECEMBER 22, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1204-MR

HOPE WHITE                                                    APPELLANT


APPEAL FROM WAYNE CIRCUIT COURT
v.        HONORABLE VERNON MINIARD, JR., JUDGE
ACTION NO. 09-CR-00079


COMMONWEALTH OF KENTUCKY                               APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; JONES AND L. THOMPSON, JUDGES.

JONES, JUDGE:  Hope White appeals from the Wayne Circuit Court's order

denying her motion to release evidence for forensic testing pursuant to KRS[1]

422.285.  After our review of the facts and applicable law, we affirm.

## I. BACKGROUND

At approximately midnight on July 19, 2008, police discovered Julie

Burchett's lifeless body in the passenger seat of her vehicle at an abandoned pallet

---

[1]  Kentucky Revised Statutes.

mill in Monticello, Kentucky. Burchett had been stabbed to death. From the position of the body, investigators concluded Burchett had been killed elsewhere and then moved to the pallet mill.

Police learned that on the day Burchett was stabbed, White had been told that her boyfriend, Bobby Buster, had been having an affair with Burchett. That evening, witnesses placed White, Buster, Burchett, and several others at a party being held at White's mother's house. One witness, Jason Miller, described seeing White confront Burchett about the affair after which Burchett retreated to the bathroom. Miller testified that after Burchett emerged from the bathroom White stabbed her with a knife.

White was indicted for murder on August 18, 2009. At her trial, the jury convicted White of murder and fixed her sentence at thirty years' imprisonment. White appealed to the Kentucky Supreme Court as a matter of right.[2] After its review, the Supreme Court reversed and remanded for a new trial because the trial court had erroneously "denied [White's] request for an instruction on first-degree manslaughter[.]" *White v. Commonwealth*, No. 2010-SC-000626-MR, 2011 WL 6826230, at *1 (Ky. Dec. 22, 2011). In her second trial, a jury once more convicted White of murder, this time sentencing her to twenty-five years.

---

[2] "Appeals from a judgment of the Circuit Court imposing a sentence of death or life imprisonment or imprisonment for twenty years or more shall be taken directly to the Supreme Court." KY. CONST. § 110(2)(b).

The Kentucky Supreme Court affirmed this conviction and sentence on appeal. *White v. Commonwealth*, No. 2013-SC-000321-MR, 2014 WL 7284295 (Ky. Dec. 18, 2014).

On February 5, 2021, through Kentucky Innocence Project counsel, White moved the trial court to grant the release of physical evidence held by the Commonwealth for forensic testing as authorized by KRS 422.285. White specifically requested DNA testing for the following items: (1) the victim's fingernail scrapings; (2) a cigarette lighter discovered on the ground outside the victim's vehicle at the pallet mill; (3) a cut hair which was found in a stab wound in the victim's right breast; (4) a hair which was found on the tank top worn by the victim; (5) a grey sweatshirt, found at the pallet mill, which had bloodstains on it; and (6) a hair found on the same grey sweatshirt. Among other things, White argued that forensic testing had advanced to the point at which the hair evidence could now be tested for DNA, which was not available at the time of her trial. White also argued the earlier results from a test of the fingernail scrapings, presented to the jury as having no foreign DNA, were actually inconclusive and warranted a second test. Finally, White contended that the results of the DNA testing, if exculpatory, would indicate a reasonable probability that she would not have been prosecuted or convicted at trial.

In its response to the motion, the Commonwealth disagreed, arguing that the results from the hair evidence could not be exculpatory and that the fingernail scrapings had already been tested. Furthermore, the Commonwealth argued the grey sweatshirt and lighter were unlikely to be related to the case because they were discovered at a public location.

After briefing on the issue, the trial court entered an order on September 20, 2021, which denied the motion for DNA testing. Applying KRS 422.285, the trial court determined that the hair evidence "would not, with a reasonable probability, either exonerate [White], lead to a more favorable verdict or sentence, or otherwise be exculpatory." (Record (R.) at 954.) The trial court explained that, even assuming the hair belonged to someone other than White or Burchett, it would not exonerate White because there was no way to tell when the hair was deposited – the presence of the hair merely indicated that Burchett "was around other people in the course of the day, which was already clear from the trial testimony." (R. at 956.) With regard to the grey sweatshirt and the lighter, the trial court determined their value to the case was speculative at best due to being discovered at the pallet mill, a public location with significant foot traffic. Finally, the trial court found that the fingernail scrapings had already been tested and, contrary to White's assertions, the results were not inconclusive. Ultimately, the trial court denied the motion, ruling as follows:

-4-

[N]one of the DNA testing requested would change anything. Nothing sought by the defendant can exclude her from the crime scene or have any bearing on the jury's verdict. In each of the 6 instances, simply because someone else's DNA may be present does not exclude the defendant from the crime, especially when the defendant was not convicted based on scientific evidence.

(R. at 960.) This appeal followed.

## II. ANALYSIS

Kentucky's postconviction DNA testing statute, KRS 422.285, applies to those who have been convicted of capital offenses, Class A and B felonies, and violent offenses as designated in KRS 439.3401. KRS 422.285(1). The statute contains both mandatory and permissive provisions under KRS 422.285(5) and (6), respectively. Under KRS 422.285(5)(a), "the court *shall* order DNA testing and analysis if the court finds . . . reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing and analysis[.]" (Emphasis added.) In contrast, the permissive provision of the statute reads as follows:

> After due consideration of the request and any supplements and responses thereto, the court *may* order DNA testing and analysis if the court finds that all of the following apply:
>
> (a) A reasonable probability exists that either:
>
> > 1. The petitioner's verdict or sentence would have been more favorable if the results of DNA

-5-

> testing and analysis had been available at the
> trial leading to the judgment of conviction; or
>
> 2. DNA testing and analysis will produce
>    exculpatory evidence[.]

KRS 422.285(6)(a)1.-2. (Emphasis added.)

Aside from provision (a), KRS 422.285(5) and (6) contain nearly identical language[3] on the additional requirements for a court to grant a motion for DNA testing:

> (b) The evidence is still in existence and is in a condition
>     that allows DNA testing and analysis to be conducted;
>
> (c) The evidence was not previously subjected to DNA
>     testing and analysis or was not subjected to the testing
>     and analysis that is now requested and may resolve an
>     issue not previously resolved by the previous testing
>     and analysis;
>
> (d) Except for a petitioner sentenced to death, the
>     petitioner was convicted of the offense after a trial or
>     after entering an Alford[4] plea;
>
> (e) Except for a petitioner sentenced to death, the testing
>     is not sought for touch DNA, meaning casual or
>     limited contact DNA; and
>
> (f) The petitioner is still incarcerated or on probation,
>     parole, or other form of correctional supervision,

---

[3] We note here that the sole distinction between KRS 422.285(5)(b)-(f) and KRS 422.285(6)(b)-(f) appears to be an extra "that" found in KRS 422.285(6)(c). This extraneous word is not material for our analysis herein.

[4] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

> monitoring, or registration for the offense to which
> the DNA relates.

KRS 422.285(5).

In a previous opinion, this Court held that relief under KRS 422.285 requires the trial court to confirm whether "(1) the petition (and supplements and response), (2) the petitioner, and (3) the evidence . . . each meets the requirements of the statute." *Owens v. Commonwealth*, 512 S.W.3d 1, 7 (Ky. App. 2017). It is only after addressing these steps that the trial court may reach the final step, "the more substantive and ultimate question – is there a reasonable probability that the DNA evidence the petitioner seeks would have made a difference had it been available at or before trial?" *Id.*

This "ultimate question," as evaluated by our Supreme Court, is whether "the evidence sought would either exonerate the defendant, lead to a more favorable verdict or sentence, or otherwise be exculpatory." *Bowling v. Commonwealth*, 357 S.W.3d 462, 468 (Ky. 2010), *as modified on denial of reh'g* (Mar. 24, 2011). The trial court's "reasonable probability" analysis must operate under the assumption that the evidence will be "favorable to the movant." *Id.* However, "[t]his assumption does not mean that the movant gets a free pass simply because he can allege that the evidence will be helpful." *Id.* The movant must show how the evidence would result in exoneration, a more favorable sentence, or exculpation. *Id.* "In the exercise of sound discretion, the trial court must then

make the call whether such reasonable probability exists, looking to whether such evidence would probably result in a different verdict or sentence." *Id.* With these principles in mind, we must examine the trial court's decision as applied to each of the pieces of evidence requested for DNA testing.

First, White requested DNA testing of the cigarette lighter found at the pallet mill outside Burchett's vehicle. The trial court declined to order testing because the lighter's connection to the case was tenuous at best. "There is nothing showing when the lighter was placed at the pallet mill, how long it had been there or anything about it." (R. at 958.) We agree. "The trial court properly excluded testing of DNA that at best could produce mere speculation." *Bowling*, 357 S.W.3d at 469.

Second, White requested DNA testing of the victim's fingernail scrapings, despite the fact that those scrapings were tested previously. In the Kentucky State Police forensic laboratory report dated June 10, 2010, the test of the fingernail scrapings indicated "no DNA foreign to Julie Burchett" was found. (R. at 224.) However, the report also noted an inconclusive result attributed to "stutter" at one of the tested loci which was not reproducible.[5] As support, White

_____

[5]    'Stutter' is the name for the product of a 'mistake' in the [polymerase chain reaction] PCR process: that is, when the DNA strand being copied during PCR slips and bulges, and therefore appears to be a DNA peak on a printed electropherogram to be interpreted by an analyst. Stutter is an artifact, not a real piece of DNA, although it looks like a piece of DNA (a peak on an electropherogram). Stutter is a well-known phenomenon even in conventional DNA testing and is usually recognized in routine testing because it is only a

-8-

points to the laboratory technician's notes, which posited "possible high stutter and / or additional DNA." (R. at 761.) The trial court denied the motion to retest the scrapings on grounds that only one of the fifteen tested loci indicated stutter, and the final report was not inconclusive or exculpatory.

Despite White's assertions to the contrary, the final laboratory report conclusively determined no foreign DNA was found in the fingernail scrapings. The statute specifically requires that "[t]he evidence was not previously subjected to DNA testing and analysis or was not subjected to the testing and analysis that is now requested and may resolve an issue not previously resolved by the previous testing and analysis[.]" KRS 422.285(5)(c). The Supreme Court explained it in this way:

> Finally, this evidence must not have been previously tested for DNA, or if it was tested, the movant must show that the type of testing now being requested is qualitatively different and "may resolve an issue not previously resolved by the previous testing and analysis." KRS 422.285[(5)](c) & [(6)](c). By this language, the legislature made clear its intent not to have successive, redundant DNA testing requests, and placed a high burden on a movant to establish that an entirely new issue is involved. Otherwise, DNA testing, sometimes

---

certain percentage of height of the real piece of DNA next to it. Stutter phenomena, however, are problematic with [low copy number] LCN testing because the height of stutter increases proportionally to a true allele (real piece of DNA) and is therefore difficult to identify as an artifact as opposed to a real allele.

*United States v. Wilbern*, 17-cr-6017 CJS, 2019 WL 5204829, at *11 (W.D.N.Y. Oct. 16, 2019), *aff'd*, 20-3494-CR, 2022 WL 10225144 (2d Cir. Oct. 18, 2022).

many years after trial, is limited to the "one bite of the apple" rule.

*Bowling*, 357 S.W.3d at 468. The laboratory report indicates that there was a stutter in testing that could not be reproduced, and this is not enough to disturb the report's ultimate conclusion that the scrapings lacked foreign DNA. Furthermore, KRS 422.285(5)(c) and (6)(c) do not permit successive testing. We discern no abuse of discretion in the trial court's denial of White's request to retest the fingernail scrapings.

The next three of the six items requested for testing involved hair: the cut hair found in the victim's stab wound, the hair found on the victim's tank top, and the hair found on the grey sweatshirt. Based on existing precedents, it is immediately apparent that hair evidence rarely qualifies for DNA testing under the statute because the result generally will not exclude a defendant. "[E]ven with an alternate perpetrator theory, the presence of someone else's DNA [will] not necessarily be exculpatory." 357 S.W.3d at 469. Because hair is easily and readily shed in the course of day-to-day activities, and there is, as of yet, no way to determine *when* a hair was deposited in any particular instance, it tends to have minimal exclusionary value.

In *Hodge v. Commonwealth*, 610 S.W.3d 227 (Ky. 2020), the Supreme Court, quoting the Sixth Circuit, pointed out that the hairs of a third party found at a crime scene could not exonerate Hodge because "the results of the new

-10-

DNA testing cannot exclude Hodge from the crime scene." *Id*. at 230 (quoting *Hodge v. Haeberlin*, 579 F.3d 627, 636 (6th Cir. 2009)). Similarly, in *Wilson v. Commonwealth*, 381 S.W.3d 180 (Ky. 2012), the Supreme Court ruled that testing hair found inside a vehicle would not be exculpatory because it could not exclude the presence of the defendant from inside the vehicle; "[a]t most, it would only show that other people had been inside the car[.]" *Id*. at 190.

One of the rare contrasting instances of valuable hair evidence may be found in *Hardin v. Commonwealth*, 396 S.W.3d 909 (Ky. 2013). In that case, the Kentucky Supreme Court considered the hair evidence potentially exculpatory because the victim "was killed following a violent close-range struggle" and "the unidentified hairs [were] *found in the victim's hand*[.]" *Id*. at 915 (emphasis added). Context is everything. In *Hardin*, there was a discernible link between the hair evidence and an alternate perpetrator which could exclude the defendant. The *Hardin* Court considered the evidence to be similar to *Bedingfield v. Commonwealth*, 260 S.W.3d 805 (Ky. 2008), in which semen collected from the victim in a rape case, when subjected to later testing, did not match the DNA of the defendant. The Supreme Court found this newly discovered DNA evidence was substantive and exculpatory and, even though not clearly an exoneration, warranted a new trial. *Id*. at 814-15.

Here, the trial court relied on *Hodge* and *Bowling* to determine that DNA testing of the hair evidence in this case could not exclude White as the perpetrator. Taking the most exculpatory outcome possible from testing, that the hair belonged to a third party and not the victim or White, the trial court reasonably determined that there was no indication of *when* the hair was deposited, and that the cut hair found in the victim's stab wound was likely on her shirt at the time she was stabbed. Even if DNA testing found the hair in the stab wound and the hair on her shirt belonged to third parties, the testimony in the case suggested that Burchett was around multiple people on the day of her stabbing, including her attendance at a party hosted at White's mother's home. While the hair could have come from Burchett's killer, it is equally likely she could have picked the hair up during a benign encounter earlier that day. As such, White's exclusion as the source of the hair would not be exculpatory. The trial court's analysis on this point was sound and we do not appreciate any abuse of discretion with respect to its denial of DNA testing as to these two pieces of hair evidence.

The trial court's approach to the grey sweatshirt, as well as the hair fiber found on that article of clothing, presents more difficult questions. The trial court took the view that the sweatshirt was found in the pallet mill, a public area, and so its connection to the case was speculative. We cannot be as sanguine as the trial court because the grey sweatshirt tested positive for blood which was "too

limited for further analysis" at the time. (R. at 452-53.) Furthermore, although we agree that the grey sweatshirt was found in a public area, we cannot ignore the reasonable inference that a bloodied article of clothing found near the body of a stabbing victim may have something to do with the crime. Taking the most favorable assumption to the movant of what DNA testing might uncover, it is entirely plausible that testing would reveal the blood belonged to Burchett, and additional DNA on the sweatshirt, or on the hair fiber found on the sweatshirt, might indicate the involvement of a third party.

However, even though testing might reveal the DNA of a third person on the grey sweatshirt, precedent requires us to conclude that this is not sufficient to mandate testing under KRS 422.285. In *Moore v. Commonwealth*, 357 S.W.3d 470 (Ky. 2011), the Kentucky Supreme Court determined that it was not favorable enough to the defendant to show that another person's DNA was found on clothing worn by the murderer. "Though the tests demonstrated the presence of another person's DNA, they did not exclude his DNA." *Id*. at 487 (footnote omitted).

We must consider the DNA evidence in light of the evidence at trial, during which numerous fact witnesses testified to White's involvement. Jason Miller testified that White stabbed Burchett multiple times at the party; a witness who was housed at the jail with White testified that White made multiple incriminating statements related to Burchett's murder, allegedly confessing to

burning a bloody shirt and moving the body with the help of family members; law enforcement officers who encountered White on the night of the murder testified to observing blood stains on her shirt and to finding blood stains under a newly laid floor at White's mother's home where Miller testified he saw White stab Burchett; and other witnesses testified to receiving phone calls from White where she allegedly conveyed details regarding the discovery of Burchett's body only known to the responding officers or someone who had moved the body.

Applying *Moore* to the present case, even if the blood on the sweatshirt was found to be Burchett's, and even if the additional DNA found on the sweatshirt or the hair fiber belonged to a third party, it "would not necessarily be exculpatory." *Id.* (quoting *Bowling*, 357 S.W.3d at 469). In fact, it would be entirely consistent with the evidence at trial indicating that various family members assisted White in disposing of Burchett's body. Thus, while such evidence might inculpate a third party – by moving the body, for example – it would not necessarily exclude White's involvement in the murder.

Finally, White urges us to view the trial court's failure to review the cumulative impact of the evidence she requested to be tested. Although she correctly cites *Moore* for the proposition that a trial court may make separate "findings as to specific items of evidence," 357 S.W.3d at 496, she cites no precedent which requires an analysis of the cumulative potential impact of the

-14-

testing. *Moore* left the decision up to the "sound discretion of the trial court[,]" *id*., as do we. Additionally, even if the evidence is viewed cumulatively, we cannot agree that it would be exculpatory. Given the fact witness testimony, we cannot agree that even if the other DNA evidence uniformly implicated another person that it would exculpate White. At best, the evidence would only assist in identifying other individuals who may have been involved in helping White dispose of the victim's body.

### III. CONCLUSION

For the foregoing reasons, we affirm the Wayne Circuit Court's order denying White's motion for DNA testing pursuant to KRS 422.285.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Miranda J. Hellman
Whitney N. Wallace
Frankfort, Kentucky

BRIEF FOR *AMICUS CURIAE*,
THE INNOCENCE PROJECT:

Susan Friedman
Tara Thompson
New York, New York

Amy Robinson Staples
Shelbyville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Harrison Gray Kilgore
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Harrison Kilgore
Matthew Kuhn
Frankfort, Kentucky