**James Ricky OWENS, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee**

NO. 2014–CA–000779–MR

Court of Appeals of Kentucky.

JANUARY 27, 2017; 10:00 A.M.

BRIEFS FOR APPELLANT: James Ricky Owens, Pro se, LaGrange, Kentucky

BRIEF FOR APPELLEE: Jack Conway, Attorney General of Kentucky, Leilani K. Martin, Assistant Attorney General, Frankfort, Kentucky

BEFORE: ACREE, J. LAMBERT AND TAYLOR, JUDGES.

OPINION

ACREE, JUDGE:

James Owens appeals the April 2, 2014 order of the Simpson Circuit Court denying his motion for DNA testing and his motions, amendments, and supplements

thereto for relief under RCr[1] 11.42 and CR[2] 60.02. We affirm.

## FACTS AND PROCEDURE

In 2009, Owens was convicted by a jury of first-degree wanton assault, tampering with physical evidence, and of being a first-degree persistent felony offender (PFO I). For these crimes, the trial court sentenced Owens to an enhanced term of thirty years' imprisonment for the assault conviction, and an enhanced term of ten years for the tampering conviction, all to be served concurrently. Owens appealed to the Kentucky Supreme Court as a matter of right; the Court affirmed Owens' convictions. *Owens v. Commonwealth*, 329 S.W.3d 307, 311 (Ky. 2011) (*Owens I* ). The Court's opinion succinctly summarizes the facts of the underlying criminal matter. They are that:

> [the victim] was assaulted at her home in Franklin, Kentucky. ... At trial, [the victim] testified that on the night of the assault, August 25, 2007, [Owens] knocked on her door around 9:30 p.m. and asked if they could talk. [The victim] recognized [Owens] as a friend of her recently deceased husband, and she agreed. She testified that they sat outside on her patio where [Owens] offered her one of the two beers he had brought with him. She declined. [Owens] told [the victim] that he thought she was a "beautiful lady." [The victim] replied that she was still dealing with her husband's death and that she was not interested in him. [The victim] then said she needed to go inside the house to check on her dog. Her next memory was waking up at Vanderbilt Hospital having no idea of how or why she was there. [Owens had attacked her brutally, causing a large open skull fracture and permanent physical and mental impairment.] [The victim] remained in Vanderbilt Hospital for several days....

> [The victim] likely would not have survived [the attack] if not for the fact that someone saw the altercation and called the police. Franklin Police Officer Benjamin Brown testified that he was dispatched to [the victim's] house on August 25, 2007, around 10:30 p.m. Upon arriving he saw a white male lift a female ( [the victim] ) up in the air and slam her down against the ground twice. As the man lifted the woman in the air a third time, Officer Brown called out to the suspect identifying himself as a police officer. The man then dropped the woman and ran off. Officer Brown gave chase to the suspect through some heavy brush but could not catch him. Officer Brown described the suspect as a white male, with blond hair, wearing a white t-shirt and jeans.

> Franklin Police Officer Justin Toth arrived at [the victim's] house soon after Officer Brown and also began to chase the suspect. Officer Toth later saw the suspect at a nearby house, near a swimming pool, dripping wet and wearing only underwear. He arrested the suspect, who later was identified as [Owens]. Officer Toth testified that [Owens] was intoxicated when arrested. ...

> Franklin Police Officer Ben Harper testified that the day after the assault he found a gray t-shirt between a driveway and a hedge at a property near [the victim's] home. The t-shirt was turned inside out and appeared to have blood on the sleeve. Testing conducted by the Kentucky State Police Crime Laboratory linked DNA from the t-shirt to both [Owens] and [the victim].

---

1.  Kentucky Rules of Criminal Procedure.

2.  Kentucky Rules of Civil Procedure.

Franklin Police Captain Dallas Wiles processed the crime scene. There he found a wallet containing [Owens's] social security card and driver's license, a hat that [Owens] admitted to owning, and two beer cans.

*Owens I*, 329 S.W.3d at 311–12.

The victim was found by officers at the edge of a brick patio bordered by wooden landscape timbers. Corporal Harper and Captain Wiles photographed this area while processing the scene. The photographs revealed significant pooling of blood and blood spatter along the landscape timber in the area where it is believed the victim had been seated. The officers also collected as evidence a white plastic chair shown overturned in the photographs near the bloodied landscape timber.

Following his arrest, Owens was Mirandized. He gave Captain Wiles a written statement. Owens admitted to being at the victim's house the night of the incident, but denied assaulting her. Owens stated he left the patio to use the bathroom and, upon his return he heard someone talking to the victim, so he left and went to his cousin's house, where he was found by police and taken into custody. Owens later gave Detective Wiles the name of an individual he believed perpetrated the assault. Detective Wiles pursued the lead, only to discover the individual had been incarcerated in another state at the time of the assault.

Owens was originally charged with first-degree intentional assault, tampering with physical evidence, and being a PFO I. He accepted a plea deal by the Commonwealth, and the trial judge specifically inquired into the knowing and voluntary nature of Owens' plea. Prior to being sentenced, Owens moved to withdraw his plea claiming he had not seen all the discovery. The circuit court granted Owens' motion and his case proceeded to trial, resulting in the verdict and sentence previously described.

In 2012, Owens, *pro se*, sought relief from his conviction under RCr 11.42, alleging ineffective assistance of counsel. Owens claimed his trial counsel failed to introduce at trial: (i) evidence to establish that the victim was struck from behind by a piece of wood; (ii) medical records from Vanderbilt Hospital that would have contradicted the victim's physician's testimony about the severity of the victim's injuries; and (iii) evidence of a new version of events, namely that when Officer Brown arrived on the scene Owens was holding the victim and that Owens ran from the scene because of a previous bad experience with law enforcement when he had been stopped with a Taser.

In that same motion, Owens further asserted his trial counsel erred by: (i) objecting to the introduction of a photograph of the blood-spattered chair in an upright position, which he believed supported his theory that the victim was struck from behind while seated in the chair; (ii) soliciting testimony from the victim's physician regarding the causation of the blood spatter on the wood timbers; and (iii) failing to effectively cross-examine Officer Brown that his view of the incident was skewed as he was temporarily blinded by the light from the victim's residence.

The circuit court denied Owens' motion without a hearing on June 18, 2012. Owens appealed to this Court. We affirmed the denial. *Owens v. Commonwealth*, No. 2012–CA–001175–MR, 2014 WL 3887908, at *1 (Ky. App. Aug. 8, 2014) (*Owens II*).

While Owens' appeal in *Owens II* was pending, he filed a *pro se* CR 60.02 motion seeking DNA testing of a single red brick (pictured in photographs of the crime scene offered in evidence by the Commonwealth) and the white plastic chair. The

Commonwealth responded that the brick was not identified or secured as evidence and therefore not subject to DNA testing. Owens then filed a supplemental CR 60.02 motion asserting his convictions and sentence must be vacated due to the Commonwealth's failure to preserve the brick.[3] He also sought to supplement his prior RCr 11.42 motion, claiming his trial counsel was ineffective by failing to: (i) ensure the brick was preserved as evidence; (ii) ask for a missing evidence instruction to support his new version of the events of that night that a third party struck the victim with a brick; and (iii) request an extreme emotional disturbance (EED) instruction. Owens also requested the appointment of counsel.

This latest round of motion practice did not end Owens' pursuit of post-conviction relief. On February 14, 2014, he filed a second motion to supplement his prior CR 60.02 motion claiming the circuit court erred by failing to give an EED instruction. He also moved to supplement his RCr 11.42 motion claiming his trial counsel failed to inform the jury of the 85% rule related to parole eligibility for violent offenders under KRS[4] 439.3401, and failed to request an evaluation of his mental capacity to stand trial. Owens also challenged the constitutionality of KRS 439.3401.

In a comprehensive order entered April 21, 2014, the circuit court denied all of Owens' pending CR 60.02 and RCr 11.42 motions. Owens requested reconsideration under CR 59.05 and additional factual findings under CR 52.02, which the circuit court also denied.

Undaunted, Owens then moved for an award of funds to hire a blood-spatter expert to examine the photographs of the crime scene. He claimed an expert could determine if the blood spatter was consistent with the victim's head being slammed repeatedly on the brick patio (as claimed by the Commonwealth) or more consistent with blood dripping from the victim's head as she bled while seated in the white chair (as claimed by Owens). The circuit court denied Owens' motion by order entered April 22, 2014. This appeal followed.

## STANDARDS GOVERNING OUR REVIEW

◼ We review a circuit court's ruling on a CR 60.02 motion for an abuse of discretion. *Foley v. Commonwealth*, 425 S.W.3d 880, 886 (Ky. 2014). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Miller v. Eldridge*, 146 S.W.3d 909, 914 (Ky. 2004) (citation omitted).

◼ In evaluating a claim of ineffective assistance of counsel, we apply the familiar "deficient-performance plus prejudice" standard first articulated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). The defendant must "show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. at 2064. Every defendant is entitled to reasonably effective—but not necessarily errorless—counsel. *Fegley v. Commonwealth*, 337 S.W.3d 657, 659 (Ky. App. 2011).

---

**3.** Owens does not present this argument on appeal. The trial court correctly ruled that "KRS 422.285 only gives the right to a test, not to reversal of a conviction simply where testing is impossible." *Moore v. Common-*

*wealth*, 357 S.W.3d 470, 484 (Ky. 2011), *as modified on denial of reh'g* (Nov. 23, 2011).

**4.** Kentucky Revised Statute.

## ANALYSIS

### A. DNA Testing & Blood–Spatter Expert

Owens first argues he is entitled to DNA testing of the above-referenced red brick and white plastic chair because that testing would support his theory of an alternative perpetrator. Specifically, Owens contends that finding DNA of another person on the brick would establish that someone else assaulted the victim and that the brick was the alternative perpetrator's weapon. He further claims proof of the victim's blood on the white plastic chair bolsters his theory that the victim was assaulted by an alternative perpetrator while she sat in that chair.

We have examined the record closely and carefully considered the arguments. We conclude, as did the trial court, that Owens has not satisfied the criteria of KRS 422.285 and, therefore, has not established his right to DNA testing, as to either item. Our analysis of the law begins with the statute.

KRS 422.285 creates a special exception to the rule of finality of judgments. *Virgil v. Commonwealth*, 403 S.W.3d 577, 578–79 (Ky. App. 2013). The statute affords certain felons the post-conviction right to DNA testing of certain evidence. Assuring only those certain felons are granted the right to test only that certain evidence for DNA is, of course, the trial court's responsibility.

Carefully and comprehensively examining the statute, we see that it indicates a multi-step analysis, although the statute itself does not lay out those steps sequentially. Nevertheless, the trial court in this case analyzed the post-conviction DNA petition, in a logical sequence, which cannot be said of every trial court. *See, e.g., Moore v. Commonwealth*, 357 S.W.3d 470, 484 (Ky. 2011), *as modified on denial of reh'g* (Nov. 23, 2011) (trial court granted relief before determining whether evidentiary item still existed). We will address generally the steps necessary to the analysis of a petitioner's right to testing. We will follow that general discussion by examining the specific steps taken by the trial court in this case as it reached its correct result.

■ Generally speaking, the statute requires a trial court to determine the availability of relief under KRS 422.285 by assessing (1) the petition (and supplements and response), (2) the petitioner, and (3) the evidence, to confirm that each meets the requirements of the statute. Only after addressing these three preliminary steps, can the trial court reach step (4), the more substantive and ultimate question—is there a reasonable probability that the DNA evidence the petitioner seeks would have made a difference had it been available at or before trial?

First, the court should consider the petition, any supplements and the Commonwealth's response.

A petition is authorized by the statute to procure only one type of post-conviction forensic testing; of course, that is testing and analysis of evidence for DNA. KRS 422.285(1)(a). Also, it must be "accompanied by a supporting affidavit containing sufficient factual averments to support the request[.]" KRS 422.285(2). "[S]ufficient factual averments" means information about the petitioner and the evidence required by the statute that cannot be determined by examining the record. Filing of the petition itself immediately triggers the requirement that the trial court "order the state to preserve during the pendency of the proceeding all evidence in the state's possession or control that could be subjected to DNA testing and analysis." KRS 422.285(9). The statute anticipates and, in fact, makes provision for supplementing

the petition as necessary. KRS 422.285(3), (5), and (6).[5]

The statute expressly requires that the Commonwealth "prepare an inventory of the evidence and shall submit a copy of the inventory to the defense and the court." KRS 422.285(9). But the statute also indicates that the Commonwealth is expected to file a written response to the petition. KRS 422.285(5), (6) (court must consider "the request and any supplements and *responses thereto*" (emphasis added)). Such responses give the Commonwealth the opportunity to, for example, inform the trial court whether the manner of the petitioner's conviction or correctional supervision status qualifies him to petition for the right in the first place. *See* KRS 422.285(5)(d), (5)(f), (6)(d), (6)(f). More importantly, as custodian of the evidence, the Commonwealth will be able to provide the trial court with certain information regarding the condition of the specific evidence the petitioner seeks to have tested. *See* KRS 422.285(5)(b), (6)(b) (whether evidence is in a condition to be tested); KRS 422.285(8) (whether the evidence has been tested previously).

With the petition, its supplements, and the Commonwealth's response in hand, as well as access to the record, the trial court can move the analysis forward to a consideration of the petitioner and whether he is someone intended by the legislature to benefit from the statute.

Not every petitioner convicted of a crime will meet the requirements of KRS 422.285. That is, the legislature did not intend the statute's benefits to be available to every convicted criminal. The petitioner must be someone who "meets the requirements of subsection (5)(f)[.]" KRS 422.285(2). That means the petitioner must be someone who "is still incarcerated or on probation, parole, or other form of correctional supervision, monitoring, or registration for the offense to which the DNA relates." KRS 422.285(5)(f). Additionally, the right to DNA testing is not available to someone who pleaded guilty to the offense, unless the death penalty was imposed. KRS 422.285(5)(d), (6)(d) ("Except for a petitioner sentenced to death, the petitioner [is required to have been] convicted of the offense after a trial or after entering an Alford plea"). Furthermore, if the conviction was for one or more "offenses under KRS Chapter 218A," the right is available *only if* "the offense was accompanied by another offense outside of that chapter for which testing is authorized" by the statute. KRS 422.285(1)(b).

If the petitioner does not qualify for this right under KRS 422.285, the trial court should dismiss the petition. However, if the trial court determines that the petitioner is among those persons intended to benefit from the statute, the court moves on to consider the evidence the petitioner seeks to have tested. Only certain evidence can be tested.

The trial court must determine whether the subject evidence ever has been "in the possession or control of the court or Commonwealth[.]" KRS 422.285(1)(a). If it was never in the possession or control of the court or Commonwealth, the petition must be denied. *See Moore*, 357 S.W.3d at 484 ("where a given item of evidence is unavailable . . . the circuit court is required to dismiss the petition"). If it was, at some point, in the custody or control of the court or Commonwealth, the analysis continues.

It is not enough that the evidence was once in the control or custody of the court or Commonwealth. Both subsection (5)(b) and subsection (6)(b) require "as a precon-

---

5. At this point, the trial court will also make determinations pursuant to this statute regarding appointment of counsel and payment of costs. KRS 422.285(2)–(4).

dition to ordering testing under KRS 422.285, [that] 'the trial court must also find that the evidence requested to be tested exists in a condition that will allow proper DNA testing. If it is not, then obviously the inquiry is at an end.' " [6] *Id.* (quoting *Bowling v. Commonwealth*, 357 S.W.3d 462, 468 (Ky. 2010)).

Then, there is this additional requirement. The evidence which is the subject of the petitioner's request for testing must not have been "previously subjected to DNA testing and analysis" or, at least, not subject to the kind of "testing and analysis that is now requested[.]" KRS 422.285(5)(c), (6)(c); KRS 422.285(8) (if previously tested, court to order distribution of "laboratory reports [and] underlying data and laboratory notes").

■ A further requirement is that there must be the possibility that the requested testing will "resolve an issue not previously resolved[.]" KRS 422.285(5)(c), (6)(c). Evidence that resolves an issue for a second time, or evidence of a fact not in dispute during trial, or corroboration of a fact already determined at trial has no exculpatory value, and therefore no probative value in the statutory context of post-conviction DNA testing. *See* KRS 17.176(1) ("[A]ny evidence submitted for testing and analysis pursuant to KRS 422.285 or 422.287 shall be of probative value.").[7] Such evidence is not exculpatory in any way that would have resulted in a different outcome had it been available at trial.

Furthermore, the statute does not allow the evidence to be tested "for touch DNA, meaning casual or limited contact DNA" [8]

6. The trial court's determination whether the evidence should be tested "may require the Commonwealth to establish the existence and condition of the evidence left in its or the court's control. If the Commonwealth objects that the evidence is not testable, since the state is the custodian of the evidence, the Commonwealth must go forward with expert testimony as to the viability of testing, which the movant may rebut." *Bowling v. Commonwealth*, 357 S.W.3d 462, 468 (Ky. 2010), *as modified on denial of reh'g* (Mar. 24, 2011).

7. Our Kentucky Rules of Evidence (KRE) recognize that evidence can be simultaneously cumulative and probative. "[E]vidence may be excluded if its probative value is substantially outweighed by the . . . *needless* presentation of cumulative evidence." KRE 403 (emphasis added). According to our Supreme Court, in a criminal trial, cumulative evidence offered before a conviction that corroborates other evidence, in fact, generally has increased probative value. *Dickerson v. Commonwealth*, 485 S.W.3d 310, 321 (Ky. 2016) (cumulative evidence was "corroborative (thereby increasing probative value)"). However, within the statutory context of post-conviction DNA testing, we read the interplay between KRS 422.285(5)(c), (6)(c) and KRS 17.176(1) as expressing the logical conclusion that cumulative evidence corroborative of evidence that led to the petitioner's conviction in

the first place cannot be exculpatorily probative.

8. Touch DNA analysis has been defined as "a technique developed early last decade which allows analysis of just 'seven or eight' cells from the outermost layer of skin." *United States v. Thomas*, 597 Fed.Appx. 882, 884 (7th Cir. 2015) (citing *What is touch DNA?*, Scientific American, http://www.scientificamerican.com/article/experts-touch-dna-jonbenet-ramsey/ (last visited Jan. 23, 2015)). It analyzes:

> the genetic information recovered from epithelial (skin) cells left behind when a person makes contact with an object. During the commission of a crime, an assailant can leave touch DNA samples behind . . . on a victim's clothing or other items implicated in the crime. Touch DNA uses the same . . . technology used to test more traditional sources of DNA—blood, semen, saliva, and other bodily fluids—to test recovered epithelial cells. The difference between "traditional" DNA testing—the testing of bodily fluids—and touch DNA testing is that material from which the DNA is collected, not the method by which the DNA sample is analyzed.

Victoria Kawecki, Comment, *Can't Touch This? Making a Place for Touch DNA in Post–*

unless the petitioner has been sentenced to death. KRS 422.285(5)(e), (6)(e). If a non-death row petitioner seeks touch DNA evidence testing, the petition should be denied.

If the petition meets the requirements of the statute, and if the petitioner is among that class of persons intended to be granted this statutory right, and if the evidence the petitioner seeks to have tested otherwise qualifies for testing, the trial court is ready to move on to the more substantive part of the analysis—judging whether the evidence the petitioner seeks would have made any difference at trial. All we have heretofore discussed is preliminary, and yet necessary, to the exercise of that more substantive judgment.

We pause here to take stock of how much that preliminary effort, although involving comparatively low-difficulty analysis, can and must accomplish, before getting to this substantive analysis.[9] By the time the more challenging part of the analysis begins, the trial court will have made determinations regarding the qualifications of the petitioner and of the evidence by applying KRS 422.285(5)(b)-(f) and (6)(b)-(f).

If the petition survives to this point, the trial court is left with nothing more or less than the most difficult question presented by the statute under KRS 422.285(5)(a) and (6)(a)—whether the evidence would have made a difference had it been available before or at trial. *See Bowling*, 357 S.W.3d at 467–68 (The "proof the movant must make . . . is that the evidence sought would either exonerate the defendant, lead to a more favorable verdict or sentence, or otherwise be exculpatory.").

Unlike any of the preliminary analysis, judging whether the substance of the petition is meritorious requires a trial court to assess "the role the evidence would have had if available in the original prosecution." *Bowling*, 357 S.W.3d at 468. This requires the court "to undertake the 'reasonable probability' analysis under the assumption that the evidence will be favorable to the movant." *Id.*

The reasonable probability analysis begins at subsection (5)(a) of the statute. In accordance with that subsection, the trial court must assume as true what the petitioner predicts DNA testing and analysis will reveal. Then, the trial court must assess whether "[a] reasonable probability exists that the petitioner would not have been prosecuted or convicted" if such evidence had been available before or during the original trial. KRS 422.285(5)(a). If the trial court reasonably so concludes, the trial court has no discretion and "*shall order* DNA testing and analysis[.]" KRS 422.285(5)(emphasis added).

If the trial court cannot conclude that the petition satisfies the requirements of KRS 422.285(5)(a), it must take the reason-

*Conviction DNA Testing Statutes*, 62 Cath. U.L.Rev. 821, 828–29 (2013).

9. The utility of and need for first addressing these preliminary steps is not inconsistent with *Bowling*, notwithstanding that our Supreme Court there said: "the first level of proof the movant must make in support of the DNA testing request, under either section (2) or (3) [now sections (5) and (6)] of the statute, is that the evidence sought would either exonerate the defendant, lead to a more favorable verdict or sentence, or otherwise be ex-

culpatory." *Bowling*, 357 S.W.3d at 467–68. We do not believe the Court intended that trial courts start at the heart and most judicially challenging part of the statute without first qualifying the petition, petitioner, and evidence as we have previously discussed. Additionally, the relative ease with which these preliminary qualifications can be determined result in a more decisive trial court order and, in turn, a more definitive ground for consideration on appellate review.

able probability analysis to the next step—analysis under KRS 422.285(6)(a).

KRS 422.285(6)(a), like subsection (5)(a), requires the trial court to assume as true what the petitioner predicts DNA testing and analysis will reveal. Then, the trial court must assess whether "[a] reasonable probability exists that either:"

1. The petitioner's verdict or sentence would have been more favorable if the results of DNA testing and analysis had been available at the trial leading to the judgment of conviction; or

2. DNA testing and analysis will produce exculpatory evidence[.]

KRS 422.285(6)(a)1., 2. If the trial court determines that either of these probabilities reasonably exists, the trial court has some discretion and "*may order* DNA testing and analysis[.]" KRS 422.285(6)(emphasis added).

However, if the trial court concludes that there is no reasonable probability either that testing would have resulted in a more favorable verdict or sentence or produce exculpatory evidence, then analysis under KRS 422.285 is over and the petition must be dismissed.

Examining the record before us, we see that the trial court in Owens' case explicitly or implicitly followed the sequence of analysis described above and correctly applied the standards described herein and in the statute.

We see that Owens' petition satisfied the requirements of the statute. Similarly, Owens' circumstances (current incarceration, conviction at trial of a qualifying crime, etc.) qualify him as a person intended by the legislature to benefit by the statute. However, the trial court concluded, and we agree, that the two items of evidence for which he sought DNA testing, a brick and a white plastic chair, did not qualify under the statute for testing, although for different reasons. The trial court treated these items separately. So shall we.

■ The brick was not "in the possession or control of the court or Commonwealth[.]" KRS 422.285(1)(a). The inventory of evidence prepared by the Commonwealth included the white plastic chair, but it did not include any bricks and, specifically, did not include the brick Owens wants to test. Police officers testified that none of them "believed that the brick had any relevance to the assault and it was not taken into evidence." (Order Denying DNA Petition, R. 76). In fact, Owens acknowledges as much in a supplement to his petition. (Owens' Reply, R. 40). KRS 422.285 does not grant any petitioner the right to test any item that is not in the custody or control of the court or Commonwealth. For this reason, the trial court dismissed Owens' petition to the extent it sought the right to DNA testing and analysis of the brick.

■ Notwithstanding the trial court's other reasons for denying DNA testing of the brick,[10] this reason alone—that the brick was never in the custody or control of the court or Commonwealth—is sufficient to affirm the order as to this item. *See Moore*, 357 S.W.3d at 480 (When "evidence to be tested for DNA is not available

**10.** The trial court also found that, even if the brick had been in the custody and control of the court or Commonwealth, "it clearly is not in a condition after 6(+) years that allows DNA testing and analysis to be conducted as required under KRS 422.285(6)(b)." (R. 76). Furthermore, the trial court indicated that

Owens requested testing for "touch DNA" of an alternative perpetrator since there is no allegation or evidence that the brick contained blood or other body fluids. (R. 74, fn 13). Since Owens was not sentenced to death, he has no right to testing and analysis of touch DNA. KRS 422.285(5)(e), (6)(e).

... the proper action was to dismiss the DNA petition as to those items."). We move on to consider the trial court's analysis of the white plastic chair.

Owens claimed that his alternative-perpetrator theory would be bolstered "if [the victim's] blood is identified as being blood found on the white plastic chair[.]" (Owens' Petition, R. 19). According to the Commonwealth's evidence inventory, the white plastic chair was in its custody and control. The trial court concluded as much and that satisfies KRS 422.285(1)(a).

The court noted that photographs in the record show "smudges of blood on the bottom of the chair seat and underneath corner of the [chair's] arm[.]" (Order Denying DNA testing, R. 77). It appears the trial court concluded the item containing DNA was "in a condition that allows DNA testing and analysis to be conducted[.]" KRS 422.285(5)(b), (6)(b). The Commonwealth did not argue otherwise.

However, referencing the portion of Owens' petition we quoted above, the Commonwealth pointed out that Owens' petition sought "proof that *the victim's blood was on*" the chair. (Commonwealth's Response, R. 28; emphasis added). The Commonwealth argued the petition should be denied because it failed under the statute to request testing of evidence that "may resolve an issue not previously resolved[.]" KRS 422.285(5)(c) and (6)(c). The issue of whose blood was on the white plastic chair was already resolved at trial, noted the Commonwealth; therefore, it argued Owens' petition should be denied because "the requested testing will make no difference whatsoever." (Commonwealth's Response, R. 28).

The trial court agreed with the Commonwealth, stating "*Owens makes no allegation and there is no proof in the record*

*that what purports to be blood evidence on the chair is that of anyone other than [the victim]*." (Order Denying DNA Petition, R. 77–78; emphasis in original). Citing KRS 17.176, the trial court could "not find that testing the chair to prove that which is not disputed has any probative value." (*Id.*, R. 78). As discussed above,[11] the evidence was not probative because it was not exculpatory, but merely corroborative of proof already available to the jury that convicted him—that the blood on the chair was that of the victim.

The trial court determined that "[t]he crux of Owens' motion" was actually "to challenge the Commonwealth's" theory and to support his own "explanation of how her blood came to be on the chair ...." (Order Denying DNA Petition, R. 78). The court "conclude[d] that such an examination is beyond the scope of a defendant's right to DNA testing under KRS 422.285." (*Id.*).

The trial court might have based its decision to dismiss the petition as to the white plastic chair only on Owens' failure to identify DNA evidence that "may resolve an issue not previously resolved[.]" KRS 422.285(5)(c) and (6)(c). Instead, the court went further and asked, under KRS 422.285(6)(a)1 and (6)(a)2, whether proof that the blood was that of the victim presented "either a reasonable probability that the defendant's verdict or sentence would have been more favorable; or that DNA testing and analysis will produce exculpatory evidence." (Order Denying DNA Petition, R. 78). The trial court's obvious answer was, no, of course not. Proof of a fact that was already determined at trial and never a question in the minds of jurors necessarily will have made no difference whatsoever.

---

11. *Supra,* note 7.

We find no abuse of discretion in the trial court's analysis or conclusions relating to Owens' petition and affirm the denial of DNA testing under KRS 422.285.

■ Owens asserts, however, that even without a right to DNA testing under KRS 422.285, KRS 31.110(1)(b) entitles him to funds to hire a blood-spatter expert to prove his alternative-perpetrator theory. Owens contends that the lack of directional blood spatter supports his position that an unknown assailant assaulted the victim while seated in the white plastic chair, resulting in: (a) the pool of blood on the patio, which was formed by blood dripping for several minutes from a stationary point; and (b) the blood spatter on the legs of the chair, which was caused by the blood dripping down onto the ground.

■ KRS 31.110(1)(b) authorizes the trial court to grant to needy defendants charged with serious crimes access to "necessary services and facilities of representation including investigation and other preparation" and to waive the cost of such services. "The services to be provided are those that are 'reasonably necessary.'" *Davenport v. Commonwealth*, 177 S.W.3d 763, 773 (Ky. 2005).

Owens' request for funds to hire a blood-spatter expert comes far too late. The motion was filed on April 18, 2014, almost five years after his trial and three years after the Kentucky Supreme Court affirmed his convictions. The photographs of the white plastic chair, and the plastic chair itself, have long been available and known to Owens. At this stage, a blood-spatter expert is not reasonably necessary. Owens' trial is over and his sentence imposed. He is merely casting his motion as part of a fishing expedition hoping to hook

evidence supportive of his CR 60.02 motion to set aside his conviction. We cannot sanction the use of KRS 31.110(1)(b) in this manner. *See Davenport v. Commonwealth*, 177 S.W.3d 763, 773 (Ky. 2005) ("Funds will not be provided pursuant to KRS 31.110 so that [a defendant] may conduct a 'fishing expedition.'").

## B. RCr 11.42 & 60.02 Claims

■ Owens presents three claims of ineffective assistance of counsel. He asserts his trial counsel was ineffective when he failed to: (1) request an EED instruction; (2) procure a hearing to evaluate Owens' competency to stand trial; and (3) notify the jury of the 85% parole eligibility rule for convictions falling under KRS 439.3401, Kentucky's violent offender statute. Regarding the first two claims, Owens asserts his prior diagnoses of bipolar disorder and major depression episodes offered ample reason for trial counsel to question his competency and would have supported an EED instruction had trial counsel had him evaluated.

Owens also raises two related claims under CR 60.02. He argues the circuit court failed in its affirmative duty to *sua sponte* order a competency evaluation to ensure Owens was competent to stand trial.[12] Owens further challenges the constitutionality of KRS 439.3401, asserting it is an unconstitutional punishment enhancer that infringes upon the authority of the parole board to grant parole as it sees fit within its statutory authority.

We decline to address the merits of these allegations. The time to raise them has passed.

■ "The rules related to direct appeals, RCr 11.42, and Kentucky Rule of

---

12. Pursuant to KRS 504.100, a trial court shall have a defendant's competency evaluated if "the court has reasonable grounds to believe the defendant is incompetent to stand trial[.]"

Civil Procedure (CR) 60.02 collectively create a structure that 'provides for wide-ranging opportunities for a defendant to challenge in all respects the legality and fairness of his conviction and sentence.' " *Hollon v. Commonwealth*, 334 S.W.3d 431, 437 (Ky. 2010) (quoting *Foley v. Commonwealth*, 306 S.W.3d 28, 31 (Ky. 2010)). This configuration "is not haphazard and overlapping, but is organized and complete." *Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983). At each stage the defendant must raise "all issues then amenable to review, and generally issues that either were or could have been raised at one stage will not be entertained at any later stage." *Hollon*, 334 S.W.3d at 437.

■ The interrelationship between direct appeals, CR 60.02, and RCr 11.42 was carefully outlined in *Gross*, *supra*. *McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky. 1997). The appeals/post-conviction process involves three basic steps.

The first step is a direct appeal "stating every ground of error which it is reasonable to expect that he or his counsel is aware of when the appeal is taken." *Gross*, 648 S.W.2d at 857.

The second step is for the defendant "to avail himself of RCr 11.42 … as to any ground of which he is aware, or should be aware, during the period when this remedy is available to him." *Id.* "Final disposition of that motion, or waiver of the opportunity to make it, shall conclude all issues that reasonably could have been presented in that proceeding." *Id.* Kentucky courts have repeatedly ruled that once a criminal defendant moves to vacate his sentence under RCr 11.42, he is not entitled to another bite at the apple. *Id.*

■ The third step—if appropriate—is filing a CR 60.02 motion raising "circumstances of an extraordinary nature justifying relief." *Id.* CR 60.02 is reserved "for relief that is not available by direct appeal and not available under RCr 11.42." *Id.* at 856. A defendant may not raise under the guise of CR 60.02 "issues which could reasonably have been presented by direct appeal or RCr 11.42 proceedings." *McQueen*, 948 S.W.2d at 416.

■ In this case, Owens has already filed an RCr 11.42 motion. The ineffective-assistance claims raised in his second RCr 11.42 motion could, and should, have been raised in his original RCr 11.42 motion. "The courts have much more to do than occupy themselves with successive 'reruns' of RCr 11.42 motions stating grounds that have or should have been presented earlier." *Hampton v. Commonwealth*, 454 S.W.2d 672, 673 (Ky. 1970). Owens is not entitled to another bite at this apple.[13]

Likewise, we decline to entertain Owens's CR 60.02 claims related to competency and the constitutionality of KRS 439.3401. Direct appeal was the proper stage to raise these arguments. Owens failed to do so. He may not attempt to remedy his error by raising them later

---

13. Notwithstanding our reluctance to address the substance of Owens' ineffective assistance arguments, two of them are so totally lacking in merit that we are compelled to take note here. First, with respect to Owens' EED claim, we need only point out that extreme emotional disturbance is a defense to intentional assault. *See* KRS 508.040(1). Owens was ultimately charged with, and convicted of, wanton assault. KRS 508.010(1)(b). His trial counsel was certainly not deficient when he declined to request an EED instruction. Second, regarding the 85% parole eligibility rule for convictions falling under KRS 439.3401, the record reveals trial counsel informed the jury—during the punishment phase of the trial—that Owens would be required to serve 85% of his sentence and asked the jury to keep this factor in mind as it considered the full punishment range. Trial counsel's performance in this regard was in no way deficient under *Strickland*.

under CR 60.02. *Goldsmith v. Fifth Third Bank*, 297 S.W.3d 898, 903 (Ky. App. 2009) ("CR 60.02 is not properly invoked where the movant is alleging errors which could have, in the exercise of due diligence, been raised in a direct appeal.").

## C. Effective Assistance of Counsel in Post–Conviction Proceeding

■ Finally, Owens argues that, under the authority of *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 1320, 182 L.Ed.2d 272 (2012), the trial court failed in its duty to ensure Owens received effective assistance of counsel related to his initial RCr 11.42 claims. We reject his argument for three reasons.

■ First, this Court addressed this very claim in *Owens II* as part of Owens' first post-conviction appeal. Owens, citing *Martinez*, argued "he was entitled to effective assistance of counsel on his RCr 11.42 motion as well as for the present post-conviction appeal." *Owens II*, 2014 WL 3887908, at *3. We rejected his position for the reasons stated in that opinion, making that decision the law of the case. A final decision of this Court, whether right or wrong, "is the law of the case and is conclusive of the questions" it resolved. *Hogan v. Long*, 922 S.W.2d 368, 370 (Ky. 1995). It is binding upon the parties and the courts. *Id.*

■ Second, Owens failed to bring this argument to the trial court's attention. When an issue has not been addressed in the order on appeal, there is nothing for us to review. Our jurisprudence will not permit an appellant to feed one kettle of fish to the trial judge and another to the appellate court.[14] *See Elery v. Commonwealth*, 368 S.W.3d 78, 97 (Ky. 2012) (citing *Kennedy*, 544 S.W.2d at 222). "[A]n appellant preserves for appellate review only those issues fairly brought to the attention of the trial court." *Id.*

Third, the Kentucky Supreme Court remains firmly wedded to the principle that ineffective assistance of appellate counsel claims are "limited to counsel's performance on direct appeal; there is no counterpart for counsel's performance on RCr 11.42 motions or other requests for post-conviction relief." *Hollon*, 334 S.W.3d at 437.

## CONCLUSION

Because Appellant has no constitutional right to further DNA testing and has failed to satisfy the requirements of KRS 422.285, the April 2, 2014 order of the Simpson Circuit Court denying DNA testing is affirmed. Additionally, we affirm the trial court's denial in that same order of Owens' request for RCr 11.42 and CR 60.02 relief relative to his other claims, including his claims of ineffective assis-

---

**14.** Justice Robert Lukowsky, who died too soon at age 54, should best be remembered for his constitutional acumen, notable in cases such as *Stone v. Graham*, 599 S.W.2d 157, 159 (Ky. 1980)(Lukowsky, J., dissenting), *rev'd*, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980) (Ten Commandments case) and *Kentucky State Bd. for Elementary and Secondary Ed. v. Rudasill*, 589 S.W.2d 877 (Ky. 1979) (limiting state regulation of private and parochial schools). Unfortunately, his most frequently quoted bit of jurisprudence is this well-worn phrase: "The appellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court." *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky. 1976), *overruled by Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky. 2010). We have chosen a somewhat different metaphor which has the advantage of more appetizing imagery and of being a more accurate idiom. *Compare* Merriam–Webster's Collegiate Dictionary 684 (11th ed. 2004) ("kettle of fish (1742) ... something to be considered or reckoned with : MATTER <books and discs ... were so very different kettles of fish ....>"), *with id.* 180 ("can of worms (1962) : PANDORA'S BOX").

tance of counsel and his claim that KRS 439.3401 is unconstitutional.

ALL CONCUR.