**Opinion issued August 6, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00937-CR

———————————

**ERNESTO CARLOS TREVINO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 437th Judicial District Court**
**Bexar County, Texas**
**Trial Court Case No. 2017CR10362**

---

## O P I N I O N

A jury convicted appellant, Ernesto Carlos Trevino, of the third-degree felony

offense of forgery of a governmental document.[1] The trial court assessed appellant's

---

[1]    *See* TEX. PENAL CODE ANN. § 32.21(a), (e) (providing that offense is third-degree
felony if document forged is government record).

punishment at four years' confinement, suspended his sentence, placed him on community supervision for four years, imposed a $1,500 fine, and ordered him to pay $4,000 in restitution. In three issues, appellant contends that (1) the State failed to present sufficient evidence that he intended to harm or defraud another person, that the writing was unauthorized, and that the writing was a government record, as required to support a forgery conviction; (2) his conviction was based on a theory of prosecution not alleged in the indictment; and (3) the trial court admitted evidence of an extraneous offense but erroneously failed to give a limiting instruction.

We reverse and render a judgment of acquittal.

## Background

### A. *Factual Background*

In July 2016, appellant, who lives in the San Antonio area,[2] placed an advertisement on Craigslist offering a deer hunting opportunity on his property in exchange for a truck. Kurt Stern was interested in this hunting opportunity, and he contacted appellant. Appellant asked Stern if he had a vehicle that he was willing to trade in exchange for the hunting opportunity. Stern told appellant that he did not have a vehicle to trade, but he did have a jet ski which he had been thinking about

---

[2] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Fourth District of Texas to this Court pursuant to its docket-equalization authority. *See* TEX. GOV'T CODE ANN. § 73.001 ("The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer.").

2

selling. Stern estimated that his jet ski was valued around $4,000, and appellant was interested in accepting the jet ski. Ultimately, Stern paid an undisclosed amount of cash and the jet ski for the hunting opportunity.

On October 15, 2016, Stern brought the jet ski to appellant's property on a trailer. At the time Stern brought the jet ski to appellant, the jet ski was "in good physical condition," but it was not "in running condition." Appellant was aware of this and did not believe it was "going to be a big issue as far as whatever had to get fixed." Stern also brought the certificate of title to the jet ski with him to appellant's property, and he testified that "the agreement was we were going to sit down and fill out the title, do it the correct way." Stern gave the title to appellant. He testified that he intended to transfer ownership of the jet ski to appellant during this visit to appellant's property, but he did not sign the back of the title—actually transferring ownership of the jet ski to appellant—on that day. Two days later, Stern had a family emergency occur, and the need to sign the jet ski's title slipped his mind. Stern testified that he never signed the back of the certificate of title transferring ownership of the jet ski to appellant.

Stern remained in contact with appellant, although they never discussed signing the certificate of title, and he continued to hunt at appellant's property throughout October, November, and December 2016. Stern agreed, on cross-examination, that he never asked appellant "for a refund on the hunt."

Appellant told Stern that he had contacted someone to repair the jet ski and that it just needed a "simple fix." One weekend, Stern arrived at appellant's property and did not see the jet ski. Stern wondered where the jet ski was because "[i]t was always there at the house." Appellant told Stern that he had "traded the jet ski for a truck." Stern had the following exchange with the State:

Q: Okay. And so why is it that you wondered where the jet ski was at? What would it matter?

A: Honestly, it didn't matter, but I knew in the back of my head that I never signed the back of the title. I knew we didn't sit down and actually do it, so that raised a red flag in my head.

Q: Okay. And why would that raise a red flag in your head?

A: That we didn't sit down to do it.

Q: Okay. That you didn't fully transfer the ownership to him?

A: Correct. Yes, ma'am.

Q: Okay. And why would that be a problem?

A: I have done a handful of titles in my life, and I know you are supposed to do it the right way, fill it out and whatnot. And I knew that wasn't done. It did not matter to me what he did with the jet ski. I just wanted to go about doing it the right way.

Stern questioned appellant about signing the back of the title, and appellant told Stern that Stern had signed the title. Stern corrected appellant, telling him that Stern had only signed the front of the title when he first received the jet ski. Stern was not concerned with whether appellant traded the jet ski, but he "wanted to go about it the right way" and he did not "want anything coming back to [him]" in case the jet ski was later involved in an accident.

4

The trial court admitted the title to the jet ski into evidence. Both the front of the title and the back of the title contain a signature stating, "Kurt Stern." Stern testified that the signature on the front of the title—which was above a line stating "signature of owner or agent"—was his signature and that he signed the front of the title when he received the jet ski. He stated that the signature on the back of the title—which was above a line stating "signature of seller"—said "Kurt Stern," but he testified that was not his writing and was not his signature. These two signatures do not look similar. Stern stated that when he gave the title to appellant, "there was no writing on the back of the title," and he did not give anyone permission to sign his name to the back of the title. He testified that he felt "taken advantage of" when he saw that his name had been signed to the back of the title.

After taking physical possession of the jet ski from Stern, appellant posted another ad on Craigslist, this time offering to trade the jet ski for a truck. Trung Nguyen saw this ad and contacted appellant regarding a pickup truck he was willing to trade for the jet ski. In November 2016, appellant went to Nguyen's house with the jet ski, which he started for Nguyen to ensure that it worked, and appellant then test-drove Nguyen's truck. Nguyen had the following exchange with the State concerning what happened next:

Q:    And then what happened?

A:    I asked him [appellant] a second time that the jet ski is okay. And he said, "Yes," so we signed the paper.

5

Q: Okay. And what paper did you sign?

A: The title of my truck and the title of the jet ski.

Q: Okay. What did you sign?

A: I signed on my title, the truck title, and gave it to him. And then he signed the title of the jet ski and gave it to me.

Q: Okay. So you watched him sign the back of the title for the jet ski?

A: Yes, I saw that, because there's only him and his wife and me [at Nguyen's house while the transaction occurred], and that's it.

The State showed Nguyen the same title that Stern had identified, and Nguyen pointed to his name on the back of the title, which he had written above a line stating "Print Name of Purchaser." When the State pointed to Stern's name on the back of the title, Nguyen testified that appellant signed that signature.

After appellant traded the jet ski to Nguyen, Stern and appellant communicated in a series of text messages on January 2 and 3, 2017. Defense counsel asked Stern whether, on January 2, 2017, he received a text message from appellant in which appellant asked Stern if he wanted the jet ski back. Stern could not recall that particular text message, but he agreed that might have happened. Defense counsel asked Stern whether he responded, "I don't want it back," and Stern could not recall his response to appellant's text, but he did not deny responding in that manner. Defense counsel then asked:

Q. And what you said was, "I just don't want it in my name." That is what you said, right?

6

A.    Correct.

Q.    All right. And then the next day at 7:16 p.m., January 3, 201[7], you said, "I don't want the jet ski back." So you said it a second time, right?

A.    Right, meaning I would like to work everything out and settle and be done and walk away.

Defense counsel did not offer, and the trial court did not admit, copies of the text messages between Stern and appellant.

Nguyen took the title to the jet ski to have it changed over to his name on January 26, 2017. Several weeks later, Nguyen received in the mail a title in his name and a decal for the jet ski—issued by the Texas Parks & Wildlife Department and titled "Certificate of Number for a Vessel"—that had his name and address and the jet ski's identification number.

One or two months after Nguyen had the title changed, appellant called Nguyen and told him that he "wanted to change it again," meaning appellant "wanted to have his jet ski back, and then [appellant] wanted to give [Nguyen] back [his] truck." Nguyen told appellant that he had already had the title to the jet ski changed to his name. When asked if appellant told Nguyen why he wanted to make the second trade, Nguyen testified, "I don't remember exactly what he said, but I believe that he said that if I do not change that back, that he might go to jail."

Derek Iden is a game warden with the Texas Parks & Wildlife Department ("the Department"). In January 2017, he began an investigation, and during this

7

investigation, he "learned that Kurt Stern had traded a personal watercraft and some money for hunting privileges that was provided by [appellant]." The jet ski became "an item of interest" in Iden's investigation, and on January 9, 2017, Iden spoke with the Boat Titling Division of the Department "and asked that if somebody were to present the [jet ski's] title to transfer ownership, that it be flagged in our system and that [Iden] be notified."

On January 26, 2017, Iden received a call from the Department's San Antonio regional office notifying him that Nguyen "came in with the title for the jet ski in question and tried to get it registered in his name." The next day, Iden and his partner visited the office and learned that Nguyen "presented the title and another piece of paperwork" to put title to the jet ski into his name. Later that day, Iden and his partner spoke with Nguyen. Nguyen informed Iden that he had traded his truck to appellant for the jet ski through a Craigslist ad. Iden then had contact with appellant through emails and text messages.

After speaking with Stern, Nguyen, and appellant, Iden concluded that Stern did not sign the title to the jet ski. Iden did not remove the "flag" on the jet ski so that Nguyen could register and use it. When asked whether he ever told Nguyen that he could not use the jet ski, Iden testified:

> I never gave him permission to use it. I told him he should not use it, no. He wanted to use it. He was talking about wanting to use it. I did not give him permission to use it.

8

Iden also testified that he wanted to seize the jet ski, but his partner did not, and it remained in Nguyen's possession. Iden told Nguyen to keep the jet ski in a safe location because Iden "believed it needed to be returned to Kurt Stern." Nguyen also testified that Iden and his partner told him that he could not operate the jet ski, that he believed it was wrong to use the jet ski, and that he had not used it during the time period between speaking with Iden and the trial. Stern testified that Iden informed him when the jet ski was located and asked Stern if he wanted the jet ski back. Stern told Iden that he "would rather try to get the dollar amount for the jet ski instead of getting the jet ski back."

Iden acknowledged that the jet ski had been titled in Nguyen's name. He testified that he was surprised to learn of this, stating:

> [I]t occurred on the day that he went to our office January 26, 2017, and I had told the clerk, "Do not allow this to go through as part of a pending criminal forgery investigation on a title." It apparently slipped through the clerical cracks, if you will, and was registered into Mr. Nguyen's name when it was not supposed to be at all. I told them—I made it clear, abundantly clear, "Do not allow this to be registered."

Iden testified that Nguyen mistakenly received a "Certificate of Number for a Vessel" decal and that having this decal and using the jet ski "could cause [Nguyen] a multitude of problems" due to the pending allegations concerning the forged title.

The jury found appellant guilty of forgery. The trial court assessed appellant's punishment at four years' confinement, suspended the sentence, and placed appellant on community supervision for four years. The trial court also imposed a $1,500 fine

9

and ordered appellant to pay $4,000 in restitution—the value of the jet ski—to Kurt Stern. This appeal followed.

## Sufficiency of Evidence

In his first issue, appellant contends that the State failed to present sufficient evidence to support his conviction for forgery. Specifically, he argues that the State did not present sufficient evidence that he intended to defraud or harm another person, that the writing was without authorization, and that the writing was a governmental record. Appellant also argues, in his first issue, that the trial court committed reversible error when it denied him the opportunity to cross-examine Stern about his purported statement to Jim McKay that he did not wish to prosecute appellant or be a complaining witness.

### A. *Standard of Review*

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Bohannan v. State*, 546 S.W.3d 166, 178 (Tex. Crim. App. 2017). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008); *see Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011) (stating that role of fact finder is "as the sole judge of the weight and

credibility of the evidence after drawing reasonable inferences from the evidence"). The jury, as the sole judge of credibility, may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *Rivera v. State*, 507 S.W.3d 844, 853 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd); *see Bohannan*, 546 S.W.3d at 178 (stating that fact finder has duty to resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Bohannan*, 546 S.W.3d at 178; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We resolve any inconsistences in the evidence in favor of the verdict. *Bohannan*, 546 S.W.3d at 178; *see also Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination."). A criminal conviction may be based on circumstantial evidence. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative

force of all the incriminating circumstances is sufficient to support the conviction."

*Hooper*, 214 S.W.3d at 13.

**B.    *Analysis***

In this case, in order to convict appellant of forgery as charged in the indictment, the State was required to prove that appellant, with intent to defraud and harm another, made, completed, executed, or authenticated a forged writing—a title to a personal watercraft—knowing the writing to be forged and the writing had been made, altered, executed, completed, or authenticated so that it purported to be the act of Kurt Stern, who did not authorize the act, and the writing "was to the tenor following":



*See* TEX. PENAL CODE ANN. § 32.21(a)(1)(A)(i), (b). Forgery is a third-degree felony if the writing is or purports to be a "government record listed in [Penal Code] Section 37.01(2)(C)." *Id.* § 32.21(e)(2). Penal Code section 37.01(2)(C) defines "governmental record" to include "a license, certificate, permit, seal, title, letter of

patent, or similar document issued by government, by another state, or by the United States." *Id.* § 37.01(2)(C). The Penal Code does not define "defraud," but it does define "harm" as "anything reasonably regarded as loss, disadvantage, or injury . . . ." *Id.* § 1.07(a)(25).

### 1. Proof of Intent to Defraud or Harm Another

Code of Criminal Procedure article 38.19 provided, at the time of appellant's trial, that "[i]n trials of forgery, it need not be proved that the defendant committed the act with intent to defraud any particular person."[3] Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws 317, 468 (amended 2019) (current version at TEX. CODE CRIM. PROC. ANN. art. 38.19). "When intent to defraud is the *mens rea* of the offense, the State must prove facts from which that intent is deducible beyond a reasonable doubt and, in the absence of that proof, a conviction will not be justified." *Okonkwo v. State*, 398 S.W.3d 689, 695 (Tex. Crim. App. 2013). To prove the requisite intent, the fact finder must be able to reasonably infer beyond a reasonable doubt that the defendant knew the writing was forged. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Leroy v. State*, 512 S.W.3d

---

[3]    The Texas Legislature amended this provision in 2019. The amendments provide that article 38.19 now applies, in addition to forgery offenses, to offenses for credit or debit card abuse and offenses for fraudulent use or possession of identifying information. Act of May 17, 2019, 86th Leg., R.S., ch. 291, § 2, 2019 Tex. Sess. Law Serv. 493, 494 (to be codified at TEX. CODE CRIM. PROC. ANN. art. 38.19). The remaining amendments are non-substantive. The amended version of article 38.19 applies only to criminal proceedings that commence on or after the effective date of the act, September 1, 2019. *Id.* § 3–4.

540, 543 (Tex. App.—Houston [1st Dist.] 2016, no pet.). To determine whether the jury reasonably could have made this inference, we look to the totality of the circumstances and weigh all of the facts. *Leroy*, 512 S.W.3d at 543; *Johnson v. State*, 425 S.W.3d 516, 524 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).

Intent to defraud or harm another may be established by circumstantial evidence. *Leroy*, 512 S.W.3d at 543 (citing *Williams v. State*, 688 S.W.2d 486, 488 (Tex. Crim. App. 1985)). There is no "bright-line rule" establishing what the State must present in order to show intent to defraud or harm another. *Id.*; *Johnson*, 425 S.W.3d at 520–24 (discussing cases considering different factors and circumstances in determining whether State had established intent to defraud or harm). "The mere possession, passage, or presentment of a forged instrument does not support an inference of intent to defraud." *Leroy*, 512 S.W.3d at 543 (citing *Parks v. State*, 746 S.W.2d 738, 740 (Tex. Crim. App. 1987)). However, a fact finder can infer intent to defraud or harm another in forgery cases if the State proves that the defendant has knowledge that the writing is forged. *Huntley v. State*, 4 S.W.3d 813, 814 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd); *see Oldham v. State*, 5 S.W.3d 840, 844 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (stating that "[p]roof of intent to defraud is also derivative of other elements" and that "[i]f the State proves that an actor has knowledge that a particular [writing] is forged, proof of intent to defraud is inferred"); *Wallace v. State*, 813 S.W.2d 748, 751 (Tex. App.—Houston [1st Dist.]

14

1991, no pet.) (same). An accused's use of deception—which may take the form of giving false information or engaging in behavior designed to avoid detection—is evidence of intent to defraud or harm. *Garcia v. State*, 630 S.W.2d 303, 305 (Tex. App.—Houston [1st Dist.] 1981, no pet.); *see Choice v. State*, 883 S.W.2d 325, 329 (Tex. App.—Tyler 1994, no pet.) ("The use of deception by an accused is evidence of intent to defraud and harm.").

In this case, the State presented evidence that Stern brought the jet ski and the title to appellant's house, but Stern did not sign the back of the title—actually transferring ownership of the jet ski to appellant—on that day or any other day. Stern testified that he did not give appellant authorization to sign his name on the back of the title. However, when appellant and Nguyen met to complete their trade of the jet ski for Nguyen's truck, Nguyen testified that he wrote his name on the back of the title above a line stating "Purchaser" and appellant signed above a line stating "Signature of Seller." Appellant did not sign his own name; instead, he signed Stern's name. Stern testified that he later learned that appellant had traded the jet ski. When Stern asked appellant about signing the back of the title, appellant stated that Stern had signed the back of the title, but Stern knew that he had not signed the title.

The State thus presented evidence that appellant signed Stern's name on the back of the title to the jet ski and that Stern did not authorize appellant to sign Stern's name. In forgery cases, courts have held that when the State presents evidence that

15

the defendant has knowledge that a particular instrument is forged, the jury may infer the defendant acted with the intent to defraud or harm. *See Oldham*, 5 S.W.3d at 844; *Huntley*, 4 S.W.3d at 814. However, we determine whether a defendant acted with intent to defraud or harm based on the totality of the circumstances. *See Leroy*, 512 S.W.3d at 543. Here, we cannot conclude, when examining all of the circumstances of this case, that a reasonable jury could determine beyond a reasonable doubt that appellant acted with the intent to defraud or harm another when he signed Stern's name on the back of the title to the jet ski.

Stern testified that he and appellant reached an agreement in which appellant would grant Stern hunting privileges on his property in exchange for an unspecified amount of cash and a jet ski. Stern brought the jet ski—and the title to the jet ski—to appellant's house on October 15, 2016, fully intending to transfer ownership of the jet ski to appellant. Stern left the jet ski and its title with appellant, but he testified that they forgot to complete the paperwork, and he did not sign the jet ski's title over to appellant. Over the next few months, throughout the end of 2016, Stern continued to hunt at appellant's property. Stern never brought up the issue of signing the title until after appellant traded the jet ski to Nguyen.

Appellant desired to trade the jet ski for a truck, and he placed a second Craigslist ad, which Nguyen saw. Nguyen and appellant then entered an agreement in which appellant traded the jet ski to Nguyen for Nguyen's truck. When they met

16

to complete the exchange and the paperwork for this deal, Nguyen signed the title to his truck, and appellant signed Stern's name on the back of the title to the jet ski.

On appeal, the State argues that appellant "intentionally defrauded Nguyen when he signed the title under someone else's name without permission" and that appellant harmed Nguyen "because Nguyen was not able to properly register and use the jet ski during the time period that the title was being investigated." The State also points out that appellant "lied to Stern about whether Stern had signed the title." We do not agree that the evidence shows that appellant, when he signed Stern's name on the title, intended to defraud or harm Stern, Nguyen, or anyone else. There is no dispute that appellant and Stern had an agreement to exchange the jet ski and cash for hunting privileges. Stern delivered the jet ski, along with the title, to appellant but mistakenly forgot to sign the title. Despite this, appellant and Stern treated their transaction as complete: appellant consulted with someone to repair the jet ski and sought a new buyer for the jet ski—ultimately, Nguyen—and Stern continued to hunt at appellant's property. Both appellant and Stern received the benefit of their bargain.

Nguyen did not receive the benefit of his bargain with appellant, as he was unable to use the jet ski, at Iden's direction, from the date Nguyen spoke with Iden in January 2017 until the date of appellant's trial in July 2018. However, there is no evidence in the record that, at the time appellant signed the title to the jet ski in

17

Stern's name, appellant did so with the intent to defraud or harm Nguyen. The evidence, instead, indicates that appellant, believing that his deal with Stern was complete and that he owned the jet ski, sought to trade the jet ski to Nguyen in exchange for Nguyen's truck, but signed Stern's name on the title when he realized that the paperwork from the deal with Stern had never been completed.

Under the circumstances of this case, we conclude that the State failed to present sufficient evidence from which a reasonable jury could conclude, beyond a reasonable doubt, that appellant, when he signed Stern's name on the back of the title to the jet ski, did so with the intent to defraud or harm another. *See* TEX. PENAL CODE ANN. § 32.21(b); *Leroy*, 512 S.W.3d at 543 (determining whether defendant, in forgery case, acted with intent to defraud or harm requires examining totality of circumstances).

We sustain appellant's first issue.[4]

---

[4] Because we conclude that the State failed to present sufficient evidence that appellant acted with the intent to defraud or harm another, an essential element of the forgery offense, and thus appellant is entitled to an acquittal, we do not address the remainder of appellant's first issue or appellant's second and third issues.

## Conclusion

We reverse the judgment of the trial court and render a judgment of acquittal.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Lloyd, and Hightower.

Publish.  TEX. R. APP. P. 47.2(b).