RENDERED:  DECEMBER 16, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0436-MR

KEWAN HACKETT                                                             APPELLANT

v.          APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
ACTION NO. 11-CR-000222

COMMONWEALTH OF KENTUCKY                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; CETRULO AND K. THOMPSON,
JUDGES.

THOMPSON, K., JUDGE:  Kewan Hackett appeals from the summary denial of

his Kentucky Rules of Civil Procedure (CR) 60.02 motion in which he alleges he

received ineffective assistance of counsel.  We affirm as Hackett's claims are

successive and otherwise without merit.

In January 2011, Hackett was indicted for murder, criminal attempted

murder, first-degree assault, tampering with physical evidence, and intimidating a

participant in the legal process. Trial counsel moved for Hackett's indictment to be dismissed; the trial court denied this request. Ultimately, the case proceeded to trial.

We recount the underlying facts of the crimes and resulting trial testimony as summarized by the Kentucky Supreme Court in Hackett's direct appeal, *Hackett v. Commonwealth*, No. 2012-SC-000773-MR, 2014 WL 2809876, at *1-2 (Ky. Jun. 19, 2014) (unpublished) (*Hackett I*):

> On January 8, 2011, victims Dajuan Best and Kristen Redmon were at Jock's Bar and Grill in Louisville. Appellant was there also, as was Appellant's friend and neighbor, Saleem Muhammad. Appellant, Saleem, and Redmon were regulars at the bar. While playing pool, Best and Appellant had an exchange of words sufficiently disagreeable that it attracted the attention and intervention of the bar's security personnel. Saleem testified that Appellant later told him that he had had a "beef" with someone over two kilograms of cocaine; the Commonwealth theorizes that this "beef" about cocaine was the heated exchange with Best which resulted, ultimately, in the shooting of Best. A video surveillance system on the premises showed that Saleem, Best, and Redmon engaged in a brief interaction just as they left together through the front door. Best and Redmon led the way and Saleem followed. The video system captured images of Appellant watching as the trio left, and then immediately moving quickly toward the back exit. Moments later four or five shotgun blasts were fired into Best's vehicle, killing Redmon and wounding Best. Appellant's theory of the case is that there was a drug deal between Best and Saleem that night, and that Saleem was the shooter.

Saleem testified that after leaving the bar he heard the gunshots and then saw someone "creeping" toward and getting into the Cadillac that Saleem knew belonged to Appellant. Saleem testified that the person entering Appellant's car was carrying an object, which the Commonwealth theorizes was the shotgun. The Cadillac then drove away.

Several witnesses at a nearby bingo hall heard the shots. Immediately after the shooting, Robert Wynn saw a Cadillac, presumably Appellant's, drive out of the bar parking lot with its lights off. Brad Gentry looked in the direction of the shots and saw a man standing near the rear of Best's vehicle. Gentry saw the man get into the Cadillac and drive away with its headlights off. Gentry later identified the vehicle as Appellant's Cadillac. Two other witnesses who were present at the bingo hall generally corroborated Wynn and Gentry's testimony. The Commonwealth's case was further strengthened by testimony of Saleem and his wife, Maria, concerning statements Appellant made after the shooting. After the shooting, Appellant telephoned Saleem and told him, "[You] ain't seen nothing," apparently a warning to keep quiet about what he had seen in the bar parking lot. Saleem also testified that Appellant later came to the Muhammads' apartment, paced nervously about, looked out the window, and said, "It wasn't meant for her," and then, "no witnesses, no case, no evidence," in an apparent reference to the shooting. Saleem testified that Appellant later asked about getting rid of his Cadillac.
Maria also testified about Appellant's arrival at their apartment after the shooting and his nervous demeanor. She testified that Appellant asked her to turn on the local television news channel that was reporting on the shooting. Upon hearing a report that Best was in stable condition, Appellant commented that that was "not a good thing," adding "he ain't dead" and "no witnesses, no evidence, no case." Maria testified that Appellant asked her if the bar had security cameras in the back; she

said he also commented that there was no evidence concerning his clothing.

At trial, Appellant's defense was a denial that he committed the crimes and an effort to show that Saleem was the perpetrator. He aggressively sought to undermine the credibility of Saleem and Maria.

The jury trial lasted from August 28, 2012, to September 7, 2012. Trial counsel asked for a directed verdict on the basis of insufficient evidence at the close of the Commonwealth's case and at the close of all proof, but these motions were denied. At the conclusion of the trial, the jury found Hackett guilty of murder, attempted murder, and tampering with physical evidence. The jury fixed Hackett's punishment at twenty years for the murder conviction, fifteen years for the criminal attempt murder conviction, and one year for the tampering with physical evidence conviction, and recommended that the sentences be served consecutively. Afterwards, trial counsel filed a motion for a judgment of acquittal or a new trial, which was also denied. The trial court sentenced Hackett in accordance with the jury's recommendation to a total of thirty-six years.

On his direct appeal, Hackett alleged a variety of errors, but the Kentucky Supreme Court affirmed the judgment of the circuit court on all issues. *Id.* at *12.

A year later, in 2015, Hackett filed a Kentucky Rules of Criminal Procedure (RCr) 11.42 motion, alleging he received ineffective assistance of

counsel in a variety of ways. In 2018, the circuit court summarily denied his motion, finding that all the allegations of error could be refuted by the record.

In his appeal from the denial of his RCr 11.42 motion, Hackett raised the following arguments:

> 1) that his counsel was ineffective because counsel failed to file a motion to dismiss the indictment because it was obtained by the presentation of false and misleading testimony to the grand jury; 2) that trial counsel was ineffective because counsel failed to object to jury instructions that allowed for a finding of guilt based on complicity; and 3) that trial counsel was ineffective because he did not object to jury instructions that did not set out separate jury findings that the appellant acted by himself or in complicity with others.

*Hackett v. Commonwealth*, No. 2018-CA-000730-MR, 2019 WL 5293672, at *1 (Ky. App. Oct. 18, 2019) (unpublished) (*Hackett II*). In 2019, the Court of Appeals affirmed the order denying Hackett's motion for postconviction relief on all grounds. *Id.* at *4.

Hackett then proceeded to file motion which is the subject of this instant appeal, seeking to vacate the judgment under CR 60.02(e) and (f) based on ineffective assistance of counsel where: (1) counsel failed to suppress his warrantless arrest without probable cause, rendering evidence subsequently obtained fruit of the poisonous tree; (2) counsel failed to move the court to dismiss the indictment where he should not have been charged with murder based on two different states of mind rather than given specific notice of which state of mind he

was required to defend against; (3) counsel failed to object to combination jury instructions, denying him of a unanimous verdict on his state of mind; and (4) counsel failed to object to an indictment charging intentional and wanton murder for one murder, and attempted murder and assault for shooting one victim, resulting in double jeopardy violations.[1]

The circuit court summarily denied Hackett's motion on the basis that he should have raised these issues in his previous RCr 11.42 motion. The circuit court explained that "[CR] 60.02 does not provide an additional opportunity for Movant to raise issues that could have been raised at an earlier proceeding." The circuit court recounted that Hackett had previously filed a motion pursuant to RCr 11.42 which had been denied and opined: "All of the grounds raised in the current motion could have been raised in the previous post-conviction motion. The current motion is simply an attempt to relitigate his ineffective assistance claims." The circuit court noted "[b]ecause his motion is procedurally improper, there is no need for an evidentiary hearing[.]"

We agree with the circuit court that Hackett's motion is successive and it is inappropriate for him to attempt to bring another RCr 11.42 motion in the

---

[1] We give Hackett the benefit of the doubt that the arguments he raised on appeal are the same arguments he raised below. Hackett's motion is missing from the record, and it was his duty to make sure that the record was complete.

guise of a CR 60.02 motion.  Furthermore, the issues that he raises closely overlap with those that he raised earlier and are also without merit.

CR 60.02 provides in relevant part:

> On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds:  . . . (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief.

"The standard of review of an appeal involving a CR 60.02 motion is whether the trial court abused its discretion.  A movant is not entitled to a hearing on a CR 60.02 motion unless he affirmatively alleges facts which, if true, justify vacating the judgment and further alleges special circumstances that justify CR 60.02 relief." *White v. Commonwealth*, 32 S.W.3d 83, 86 (Ky. App. 2000) (internal quotation marks, citations, and brackets omitted).

> "The rules related to direct appeals, RCr 11.42, and [CR] 60.02 collectively create a structure that 'provides for wide-ranging opportunities for a defendant to challenge in all respects the legality and fairness of his conviction and sentence.'" *Hollon v. Commonwealth*, 334 S.W.3d 431, 437 (Ky. 2010) (quoting *Foley v. Commonwealth*, 306 S.W.3d 28, 31 (Ky. 2010)).  This configuration "is not haphazard and overlapping, but is organized and complete." *Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983).  At each stage the defendant must raise "all issues then amenable to review, and generally issues that either were or could have been

raised at one stage will not be entertained at any later stage." *Hollon*, 334 S.W.3d at 437.

*Owens v. Commonwealth*, 512 S.W.3d 1, 13-14 (Ky. App. 2017).

As further explained in *McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky. 1997):

> A defendant who is in custody under sentence or on probation, parole or conditional discharge, is required to avail himself of RCr 11.42 as to any ground of which he is aware, or should be aware, during the period when the remedy is available to him. Civil Rule 60.02 is not intended merely as an additional opportunity to relitigate the same issues which could "reasonably have been presented" by direct appeal or RCr 11.42 proceedings. RCr 11.42(3); *Gross*[, 648 S.W.2d] at 856. The obvious purpose of this principle is to prevent the relitigation of issues which either were or could have been litigated in a similar proceeding. As stated in *Gross*, CR 60.02 was enacted as a substitute for the common law writ of coram nobis.
>
>> The purpose of such a writ was to bring before the court that pronounced judgment errors in matter of fact which (1) had not been put into issue or passed on, (2) were unknown and could not have been known to the party by the exercise of reasonable diligence and in time to have been otherwise presented to the court, or (3) which the party was prevented from so presenting by duress, fear, or other sufficient cause. Black's Law Dictionary, *Fifth Edition*, 487, 144.
>
> *Id.* at 856. In summary, CR 60.02 is not a separate avenue of appeal to be pursued in addition to other remedies, but is available only to raise issues which cannot be raised in other proceedings.

When claims raised in a CR 60.02 motion "are of the type ordinarily raised in an RCr 11.42 petition[,]" such claims are "in practical effect . . . an impermissible successive RCr 11.42 motion." *Sanders v. Commonwealth*, 339 S.W.3d 427, 438 (Ky. 2011).

Hackett has provided absolutely no justification for why his current ineffective assistance of counsel claims could not have been raised in his prior RCr 11.42 motion. These claims are thereby precluded as successive, as CR 60.02 is not a proper mechanism for addressing ineffective assistance of counsel claims which should have been raised and addressed earlier.

Additionally, his arguments do not fit within the rubric of CR 60.02(e) or (f). As to CR 60.02(e), Hackett seems to be misinterpreting what he believes to be an erroneous judgment (due to ineffective assistance of counsel) as a void judgment. However, these are not the same. A judgment is void if there is a lack of jurisdiction over the defendant or the subject matter. *See Commonwealth v. Marcum*, 873 S.W.2d 207, 211 (Ky. 1994); *Thomas v. Morrow*, 361 S.W.2d 105, 106 (Ky. 1962); *Hudson v. Hightower*, 307 Ky. 295, 298, 210 S.W.2d 933, 934 (1948).

CR 60.02(f) also does not provide an appropriate basis for relief as it "may be invoked only under the most unusual circumstances[.]" *Howard v. Commonwealth*, 364 S.W.2d 809, 810 (Ky. 1963). "To justify relief [pursuant to

-9-

CR 60.02(f)], the movant must specifically present facts which render the 'original trial tantamount to none at all.'" *Foley v. Commonwealth*, 425 S.W.3d 880, 885 (Ky. 2014) (quoting *Brown v. Commonwealth*, 932 S.W.2d 359, 361 (Ky. 1996)). In contrast, claims which "are of the usual procedural, evidentiary, and *ineffective assistance of counsel variety*, . . . *do not* implicate the extraordinary sort of claim contemplated under CR 60.02(f)." *Sanders*, 339 S.W.3d at 437 (emphasis added).

Finally, Hackett's claims lack all merit. Hackett's first argument is that trial counsel was ineffective for failing to suppress the fruits of his warrantless arrest on the basis of lack of probable cause.

"Probable cause exists when the facts and circumstances within the arresting officers' knowledge or of which they have reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been committed or is being committed." *Shull v. Commonwealth*, 475 S.W.2d 469, 471 (Ky. 1971). We are confident that there was ample probable cause for Hackett's arrest based on the facts revealed in the investigation as detailed by the Supreme Court in *Hackett I*. Therefore, any evidence that was discovered pursuant to his arrest is not problematic. Additionally, evidence was properly found pursuant to search warrants or due to Hackett's own voluntary statements, rather than as a result of his arrest.

-10-

Hackett's next argument is that counsel was ineffective for failing to move the court to dismiss the indictment where he should not have been charged with murder based on two different states of mind rather than given specific notice of which state of mind he was required to defend against. Again, we disagree.

As explained in *Hackett II*, Hackett already argued in his appeal of the denial of his RCr 11.42 motion "that his counsel was ineffective because counsel failed to file a motion to dismiss the indictment because it was obtained by the presentation of false and misleading testimony to the grand jury[.]" *Hackett II*, 2019 WL 5293672, at *1. The Court of Appeals addressed this argument on the merits and denied it on the basis that Hackett could not show prejudice where the indictment would have still been issued based upon other testimony the grand jury heard. *Id.* at *2-3. By doing so, it generally ruled that the indictment was proper.

Hackett's argument that the indictment is flawed for giving alternative states of mind necessary for the offense is incorrect, as the indictment properly gave notice that the Commonwealth would seek to convict him under either state of mind available for murder under Kentucky Revised Statutes (KRS) 507.020. While Hackett may have preferred only having to defend against one state of mind, the indictment was not improper for listing both states of mind which were supported by the evidence.

-11-

Hackett's next argument is that his counsel was ineffective for failing to object to combination jury instructions,[2] denying him a unanimous verdict on his state of mind. This argument is also wholly without merit.

We agree with Hackett's basic premise that it can be problematic for combination jury instructions to be given which allow for conviction for two different states of mind when there is only evidence of one state of mind. *See, e.g.*, *Hayes v. Commonwealth*, 625 S.W.2d 583, 584-85 (Ky. 1981) (reversing for unanimity error where "[i]t would be clearly unreasonable for the jury to believe that appellant's conduct was other than intentional").

However, while Hackett argues he could have only sought to kill Redmon wantonly, the issue of whether there was sufficient evidence to convict him under either state of mind was addressed by our Court in its consideration of the similar arguments Hackett raised in his RCr 11.42 appeal regarding trial counsel's failure to object to the combination jury instructions. Our Court

---

[2] The indictment contained combination charges which were identical save for the exact crime and victim named regarding murder, criminal attempted murder and first-degree assault. As an example, count one alleged that Hackett, "acting alone or in complicity with others, committed the offense of Murder by intentionally or under circumstances manifesting extreme indifference to human life wantonly caused the death of Kristen Redmon." The jury instructions tracked the language of the indictment. As an example, instruction one for murder provided the alternatives that Hackett was "acting alone or in complicity with another or others" in killing Redmond and in doing so caused her death "intentionally" or "was wantonly engaging in conduct which created a grave risk of death to another and thereby caused the death of Kristen Redmond under circumstances manifesting an extreme indifference to human life." In these instructions, the jury was not required to select an option as to how such murder was committed.

-12-

specifically observed that the circumstantial evidence and lack of eyewitness testimony regarding the shooting itself, resulted in the jury being allowed to consider multiple theories about how the shooting occurred. *Hackett II*, 2019 WL 5293672, at *3. Our Court also thoroughly considered Hackett's prior argument broadly as the Court was uncertain of his exact argument, and in doing so addressed the argument he now raises, and determined it was without merit:

> Lastly, the appellant contends that counsel was ineffective for failing to object to the jury instructions because the jury instructions did not have separate verdict forms for the jury to find specifically why they found him guilty for the crimes of murder and attempted murder. It is unclear exactly which issue the appellant claims was error. His appeal section heading for this argument states that he objects to a lack of a finding between complicity and him being the actor. His argument discusses that issue and the issue of intentional versus wanton acts. This argument is also intertwined with the issue discussed previously. We will address both as they are the same legal issue.
>
> Trial counsel did attempt to have the court instruct solely on intentional murder and offered instructions on lesser offenses on behalf of the defendant. Mr. Hackett argues that a general verdict based on a combination murder instruction violates his right to a unanimous verdict. The Supreme Court of Kentucky has held that if the evidence supports both theories, a combination jury instruction does not violate the unanimous verdict requirement. *Benjamin v. Commonwealth*, 266 S.W.3d 775 (Ky. 2008). As stated before, there was no direct eyewitness testimony that the appellant committed the actual act of the shooting. There was circumstantial evidence that the appellant either committed the crime himself or could have simply been responsible for the

-13-

action itself. There was no direct evidence as to the appellant's state of mind. Based on the facts presented, the jury could have believed he acted intentionally or wantonly. It could have believed he intended the result or he was simply acting with an extreme indifference to human life.

The appellant's concern about the possibility of a lack of unanimous verdict is one that the Supreme Court in *Benjamin* shared. *Benjamin* opines that separate verdict forms would be better. However, *Benjamin* specifically allowed this type of combined jury instructions. *Id.* at 783-85. Four years later, in *Malone v. Commonwealth*, 364 S.W.3d 121, 130-31 (Ky. 2012), the Supreme Court noting *Benjamin* again refused to require separate jury instructions. It cannot be said that trial counsel was ineffective by failing to object to this type of combined jury instructions when the Supreme Court of Kentucky has allowed the practice. The court below had from the record a sufficient basis to deny the motion without an evidentiary hearing. Trial counsel's failure, if a failure at all, to object to the combination jury instructions as the appellant now argues was not an error which denied him the right to a trial whose result was reliable. It is also important to note in the discussion of ineffective assistance of counsel that trial counsel tendered jury instructions that would have required a finding that the appellant intentionally acted without any reference to complicity to convict the appellant. Counsel placed before the trial court the arguments made by appellant in this appeal in substance if not in the form argued.

*Id.* at *3-4. Therefore, this argument is without merit, repetitious and precluded by

the law of the case.

Hackett's final argument raised in his appellate brief is that counsel

was ineffective for failing to object to an indictment charging intentional and

-14-

wanton murder for one murder, and attempted murder and assault for shooting one victim, resulting in double jeopardy violations, is also without merit. In addressing Hackett's previous ineffective assistance of counsel argument for failing to file a motion to dismiss the indictment, our Court in *Hackett II* specifically determined that "there were sufficient grounds for the indictment[.]" *Id.* at *3. Additionally, as we have discussed *supra*, there was evidence to support a conviction for murder under either state of mind provided for in KRS 507.020, so the indictment providing alternatively for both states of mind, intentionally and wantonly, was appropriate.

To the extent that Hackett was perhaps trying to argue that these charges were erroneous as duplicitous, this argument is also without merit. *See United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir. 1989) (explaining "[w]here a penal statute . . . prescribes several alternative ways in which the statute may be violated and each is subject to the same punishment . . . , the indictment may charge any or all of the acts conjunctively, in a single count, as constituting the same offense, and the government may satisfy its burden by proving that the defendant, by committing any one of the acts alleged, violated the statute").

Hackett was also not convicted of two counts of murder of the same person, one each with each state of mind, so he was not subjected to double

-15-

jeopardy. Therefore, even if the indictment was erroneous (it was not), it could not have been prejudicial.

It was also appropriate for the indictment to charge both attempted murder and assault of the same victim in different counts as there was evidence to support each charge. While double jeopardy could have resulted if Hackett was convicted of both attempted murder and assault of the same person, the jury instructions specifically precluded such an outcome. In the jury instructions regarding criminal attempted murder and first-degree assault charges, in which Best was the victim, the jury was instructed to only to consider the count for first-degree assault if it did not find Hackett guilty of the criminal attempted murder. As the jury found Hackett guilty of the criminal attempted murder, it never proceeded to consider the assault charge. Therefore, had there even been an error in the indictment in charging both (there was not), it could not have prejudiced Hackett.

Finally, Hackett raises a new argument in his reply brief, that his *pro se* motion should not have been dismissed where he never had the active assistance of counsel for his postconviction actions, and thus his untimely and successive arguments should have been considered on the merits. We disagree.

"The reply brief is not a device for raising new issues which are essential to the success of the appeal." *Milby v. Mears*, 580 S.W.2d 724, 728 (Ky.

App. 1979).  We have no reason to believe that this issue was raised before the circuit court, and there is a "long-standing prohibition against presenting a new theory of error at the appellate level[.]" *Henderson v. Commonwealth*, 438 S.W.3d 335, 343 (Ky. 2014).  Therefore, it is inappropriate to consider such an argument at this juncture.

Additionally, Hackett failed to cite any Kentucky law in support of his argument that a lack of counsel excuses his failure to follow our procedural rules and raise all of his RCr 11.42 arguments at the same time.  Finally, as we have already addressed his claims on the merit and found them to be wholly lacking in merit, there is no reason to require the circuit court to consider these claims further.

Accordingly, we affirm the Jefferson Circuit Court's summary denial of Hackett's motion for CR 60.02 relief.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kewan Hackett, *pro se*
Beattyville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Robert Baldridge
Assistant Attorney General
Frankfort, Kentucky